## MaHARRY v. EATMAN.

No. 1876. Opinion Filed May 23, 1911.

(116 Pac. 935.)

1. GUARDIAN AND WARD—Appointment of Guardian—Jurisdiction of United States Court. The United States court for the Southern district of the Indian Territory had authority to appoint a guardian or curator of the estate of a minor located in that district, although the domicile of the minor was in the Central district (section 3461, c. 73, Mansf. Dig. Ark.); and a guardian so appointed, when qualified, had authority to execute a valid lease of the minor's land.

2. EJECTMENT—Judgment for Plaintiff—Right to Costs. The plaintiff in an action of ejectment, who obtains judgment in the trial court for possession, is also entitled to judgment for his costs. Section 6115, Snyder's Statutes.

3. COURTS—Transfer of Cause—Probate Matters—Jurisdiction of County Court. Under section 1, c. 16, art. 3, Sess. Laws 1907-08, p. 213, the county court of Pushmataha county had the power to make an order transferring a probate cause to the county court of the domicile of the minor on a petition filed more than 60 days after the passage and approval of said act.

4. INDIANS—Deed by Indian Heirs—Approval by Secretary of Interior. The approval of the Secretary of the Interior was not nec-

essary to the validity of the deed of full-blood Indian heirs executed September 16, 1909, whose ancestor died in August, 1907, the approval of the court having jurisdiction of the settlement of the ancestor's estate being all that is required by section 9, Act of May 27, 1908, c. 199, 35 Stat. 315.

(Syllabus by the Court.)

*Error from District Court, Garvin County; R. McMillan, Judge.*

Action by W. F. MaHarry against J. M. Eatman. Judgment for plaintiff, and he brings error. Cross-petition by defendant. Reversed.

This is an action of ejectment brought by the plaintiff in error W. F. MaHarry against the defendant in error J. M. Eatman, in the district court of Garvin county, March 7, 1910, to recover the possession of a certain tract of land situated in said county. The plaintiff's claim was based on a deed from the heirs of the deceased allottee, dated September 16, 1909. The defendant admitted possession and justified his holding under a five-year lease from the legal guardian, the term of which extended until December 31, 1910, and also under a second lease executed in June, 1908, for a term of three years from January 1, 1911. The case was tried on a statement of facts agreed to by counsel of the respective parties as follows:

"First. That the said W. F. MaHarry is a citizen of the state of Oklahoma; that J. M. Eatman is a citizen of the state of Oklahoma, and a resident of Garvin county, Okla., and that he and the subject-matter of this controversy is within the jurisdiction of this court.

"Second. That the defendant J. M. Eatman is in possession of the land in controversy.

"Third. That Davis Lowman was a full-blood member of the Choctaw Tribe of Indians appearing on the Choctaw Approved Rolls opposite Roll No. 2,745; that the land in controversy constitutes a part of his allotment; that the said Davis Lowman was born and all his life lived in the Choctaw Nation, formerly the Central judicial district of the Indian Territory; that the land involved in this controversy, and being a portion of his allotment, is located in what was the Southern judicial district of the Indian Territory; that on the 29th day of November, 1904, the United States court for the Southern district of the Indian Territory at Ardmore appointed E. Dunlap the guard-

ian or curator of the estate of said minor, Davis Lowman; that the said E. Dunlap, as guardian or curator of the estate of that said Davis Lowman, executed a five-year lease to J. S. Mullen, who assigned the said lease to the defendant herein, which said lease was approved by the United States court for the Southern district of the Indian Territory, and terminates December 31, 1910, and which lease was duly placed of record in the proper recording district of the Southern district of the Indian Territory, and within the time prescribed by law.

"Fourth. That the said E. Dunlap as said guardian or curator afterwards, and on or about the 3d day of February, 1907, resigned his said guardianship or curatorship of the estate of said Davis Lowman; that thereafter, on or about the 10th day of April, 1907, Ellis Lowman, the father of the said Davis Lowman, was appointed guardian of the said Davis Lowman, also Leviah Lowman, Kieth Lowman, and Robert Lowman, minor brothers of the said Davis Lowman, by the United States court for the Central judicial district of the Indian Territory, Antlers division, wherein the said minors were domiciled, and at the time of said appointment said minors and father were then, and have been for many years theretofore, residents and domiciled in the said Central district of the Indian Territory; that the mother died ten years ago.

"Fifth. That on the admission of Oklahoma to statehood on the 16th day of November, 1907, there was carved out of the Central district of the Indian Territory, among others, two counties, namely, Pushmataha and McCurtain counties; that under the law the county court of Pushmataha county inherited all of the probate cases then pending in the Central district of the Indian Territory, Antlers division, and the said Lowman family lived then, and for many years theretofore, in that portion of said Central district now known as 'McCurtain County'; that about the 7th day of June, 1909, upon a petition filed by one having a substantial interest in said case, to wit, Ellis Lowman, the guardian, the said county court in and for Pushmataha county, Okla., transferred said probate proceedings involving the guardianship of Leviah Lowman, Kieth Lowman, and Robert Lowman, to the county court of McCurtain county, Okla., the residence and domicile of said minors, where said proceeding is now pending.

"Sixth. That the said Davis Lowman died on or about the 17th day of August, 1907, in what is now McCurtain county, Okla., leaving, surviving him as his heirs, his father, the said

Ellis Lowman (his mother having died prior to him), and ·his brothers, the said Robert, Kieth and Leviah Lowman, minors, and Sallie Lowman Taylor, adult sister; that on or about the 11th day of June, 1908, the said Sallie Taylor and Ellis Lowman, guardian of Robert, Kieth, and Leviah Lowman, as his heirs, executed a lease upon the allotment of the said Davis Lowman, commencing the 1st day of January, 1911, and ending June 10, 1913, to the said J. M. Eatman, and that no steps were taken to have said lease approved by the county court of McCurtain county, or any other tribunal; that said lease has never been recorded in Garvin county wherein said land is located, nor was it ever acknowledged by either party thereto by a notary public or any other authority authorized to administer acknowledgments; that on or about the 12th day of June, 1908, the said guardian of the said minor heirs of the said Davis Lowman, by proper petition commenced the probate proceedings looking to the sale of the allotment of the said Davis Lowman, and that on the 16th day of September, 1909, a deed was finally executed to Edgar A. Bancroft who conveyed to plaintiff; that the probate proceedings involving the sale of the allotment of the said Davis Lowman, deceased, by the heirs aforesaid, was in all things regular, in so far as the county court of McCurtain county is concerned; that the consideration paid was adequate, and the deed was properly executed by the heirs of the said Davis Lowman.

"Seventh. · That said conveyance has never been approved by the Secretary of the Interior, but was approved by the county court of McCurtain county; that all the heirs of the said Davis Lowman, deceased, are full-blood members of the Choctaw Tribe of Indians.

"Eighth. That said land was allotted to the said Davis Lowman, deceased, prior to April 26, 1908, to wit, during the year 1904.

"Ninth. It is further .agreed that after W. F. MaHarry, plaintiff herein, acquired title to said lands, that the said Eatman honestly acting under the impression that some law, either of this state or of Congress, permitted the establishment of highways along section lines, he did, without notifying the said MaHarry, and in good faith, permit the establishment of a road or thoroughfare 1,220 yards long and about 16 2-3 feet wide on and over the land involved herein, and that said thoroughfare has been continually used since said time, which said land so permitted to be taken by the said Eatman consisting of 1¼ acres of land

of the value of $31.50. And it is further agreed that the said W. F. MaHarry constructed a fence along said thoroughfare at an expense of $55; that the county authorities made no settlement with the said W. F. MaHarry nor any other person, nor did they offer to make any settlement, and that the said authorities did not pay nor offer to pay the said W. F. MaHarry nor any other person any money for the said thoroughfare so appropriated to the public; and that no condemnation was had or attempted to be had as is provided by law.

"Tenth. That the annual rental value of said land is $200, and that the value of said land is $2,500."

In addition to the statement of facts there was the deposition of U. M. Rose of Little Rock, Ark., who testified that during his 50 years' experience as a practicing lawyer in Arkansas he had not known of a single instance where a guardian had been appointed outside of the county of the domicile of the minor; and also the deposition of W. W. Bennett, in charge of the Interior Department of the Indian Service at Muskogee, who testified that it had been the practice of the department to recognize leases by allottees for cumulative periods where the aggregate terms did not exceed five years, and that it had been the practice to treat as void a second lease commencing at the expiration of a first lease running for a term of five years.

The trial court found as follows:

"On this, the 4th day of June, 1910, this matter came on to be heard, upon the agreed statement of facts and depositions of W. W. Bennett of Muskogee and U. M. Rose of Little Rock, Ark., and the court after considering the same, hearing the argument of counsel, and being fully advised in the premises, is of the opinion:

"First. That the appointment of E. Dunlap as guardian or curator of the said estate of Davis Lowman by the United States court within and for the Southern district of the Indian Territory was a valid appointment, so far as it affects the estate of the said Davis Lowman, and that the lease executed by E. Dunlap, guardian, was a valid and binding lease.

"Second. That subsequent to the admission of Oklahoma into the Union, and subsequent to the appointment of Ellis Lowman as guardian of Leviah, Kieth, and Robert Lowman by the United States court within and for the Central district of the Indian Territory, it became the duty of the county court of Push-

mataha county, upon the application of the guardian, to transfer the guardianship proceedings to McCurtain county, the domicile of the minors, and the sale made in said McCurtain county was a valid one, and the title to the land in controversy vested in plaintiff's grantor, Edgar A. Bancroft, by reason thereof, and after the approval of said conveyance from the heirs of said Davis Lowman by the county court of McCurtain county, under the act of Congress of May 27, 1908, there was no necessity of having said conveyance approved by the Secretary of the Interior. That the lease executed by Ellis Lowman, guardian aforesaid to the defendant, although executed while the defendant had an unexpired lease on said land, was not invalid for this reason, but the failure of the defendant to have said lease acknowledged and recorded invalidated same, and the defendant can claim no right to the possession of the land in controversy thereby, and the lease from Ellis Lowman, guardian to the defendant, is invalid for the further reason that the same was not approved by the McCurtain county court.

"Fourth. That the plaintiff is entitled to recover of and from the defendant $86.50 for the land taken and damage done, by reason of the acts of said defendant, for the reason that the county authorities failed to comply with the law relative to establishing highways.

"It is therefore ordered, adjudged, and decreed by the court that the plaintiff, W. F. MaHarry, do have and recover of and from defendant, J. M. Eatman, the S. W. ¼ of S. W. ¼ and W. ½ of S. W. ¼ of S. E. ¼ of section 33, and N. ½ of N. W. ¼ and N. ½ of S. E. ¼ of N. W. ¼ of section 32, township 4 North, range 3 West of the Indian base and meridian, together with his damages in the sum of $86.50, and it is further ordered that writ of restitution herein be withheld until January 1, 1911, and it is further ordered that the plaintiff pay all of the costs of this action; for which let execution issue."

The plaintiff excepted to the judgment and appealed to this court. The defendant also filed a cross-petition in error.

*Cottingham & Bledsoe* and *H. A. Ledbetter,* for plaintiff in error.

*J. C. Little* and *C. B. Kendrick,* for defendant in error.

GALBRAITH, J., *pro tem.* (after stating the facts as above). The questions presented in this record for decision may

be stated briefly as follows:   (1) Did the United States court for the Southern district of the Indian Territory have authority to appoint E. Dunlap guardian or curator of the estate of Davis Lowman, located in said district, when the domicile of the minor allottee was in the Central district?   (2) Could a guardian so appointed make a valid lease of a minor's lands?   (3) Was the lease of Ellis Lowman as guardian of the defendant in error, dated June, 1908, for a term commencing January 1, 1911, a good and valid lease?   (4) Did the trial court err in taxing the costs of the action against the plaintiff in error?   (5) Did the county court of Pushmataha county have legal authority to transfer the guardianship proceedings of Ellis Lowman from that county to McCurtain county on application made more than 60 days after the enactment of the amendatory statute regulating the transfer of causes (Sess. Laws 1907-08, p. 213)?   (6) Was the approval of the Secretary of the Interior necessary to the deed of the adult heirs of Davis Lowman, deceased, who died during the year 1907, in order to pass their title?

The authority of the United States court for the Southern district of the Indian Territory to appoint Dunlap as the guardian must be found in the Arkansas statute and the act of Congress extending the same over the Indian Territory, if at all, since that was the law under which the proceedings were had. It seems that this question has never been passed upon by the Supreme Court of Arkansas directly; or even indirectly in such a manner as to be of material assistance to this court in determining the question.   The deposition of an eminent practitioner in Arkansas was admitted at the hearing, and he testified that in his 50 years' experience at the bar in that state he had not known of a single case where the probate court in that state, outside of the domicile of the minor, had appointed a guardian or curator of the estate of a minor.   While, on the other hand, it is conceded that the practice was common in the Indian Territory, prior to statehood, for the United States courts to appoint guardians or curators of the estates of minors located in their respective jurisdictions without regard to the domicile of the minor.   It does not

clearly appear just how a practice so different as that in Arkansas and that in the Indian Territory, under the same statutes, became established. It is possible that the broad terms of the statute itself, and the wide difference in the conditions of the estates of minors in the Indian Territory and in the state of Arkansas, gave rise to this difference in the practice.

The statute reads as follows: "The court of probate shall have power to appoint guardians for minors, and possess the control and superintendence of them." Mansf. Dig. § 3461. This section is found in chapter 73 of Mansfield's Digest, and the act of Congress of May 2, 1890, extending this chapter over the Indian Territory, provides: "And said court in the Indian Territory shall appoint guardians and curators." Act May 2, 1890, c. 182, § 31, 26 Stat. 94.

Prior to statehood there were no county divisions or county government in the eastern part of the state of Oklahoma, then known as the "Indian Territory." Under the court government of that country then existing, the territory was divided into judicial districts, which corresponded to county divisions of the state of Arkansas, at least as far as the jurisdictions of the courts were concerned. Sessions of the United States courts were held at various points in each district, designated as "court towns," but the several courts exercised jurisdiction over the entire district, and holding the court at various places in the district was a system of convenience merely. It is a matter of common knowledge that in the division of the property of the Five Civilized Tribes, the children taking an equal part thereof with the parents, a large per cent. of the property in the eastern part of the state was and is now owned by minors, and that the domicile of the minor and the location of his allotment or estate is often widely separated. This condition of course brought the question squarely to the court as to whether it would not be more economical and less expensive to the estate of the minor to appoint curators or guardians for his estate in the district where his land was located. There was nothing in the statute expressly forbidding that this be done, and these conditions doubtless gave rise to the

practice. It was doubtless made to appear to the United States court in the Indian Territory that it would be less expensive in the management of the land of the minor to appoint some one who lived near the location of the land, rather than some one who might live far distant, although his residence was the same as that of the minor. It was the property and not the ward that demanded the care and attention of a curator, and the best interest of the ward's estate that prompted the court to exercise the jurisdiction.

Aside from the fact that this practice was in vogue and recognized for years in the Indian Territory prior to statehood, and vast property interests have been acquired thereunder, and the unsettling of such interests by denying the authority of the courts to make such appointment, we believe that the practice ought to be sustained. There can be no question about the fact that the interest of the ward was better protected by this practice than it would have been by pursuing the practice of appointing a guardian at the domicile of the ward only. We believe that this statute ought to be construed as vesting the discretion in the court to make the appointment either at the domicile of the ward or where the land was located as might seem best to serve the interest of the minor and his estate.

This construction of the statute finds support in *McKeen v. Delancy's Lessee,* 5 Cranch, 22, 3 L. Ed. 25. In an opinion by Chief Justice Marshall, it is said:

"The first question which presents itself in this cause is, Was the deed properly approved? Were this act of 1715 [Laws Pa. 1715, c. 208] now, for the first time, to be construed, the opinion of this court would certainly be that the deed was not regularly proved. A justice of the Supreme Court would not be deemed a justice of the county, and the decision would be that the deed was not properly proved, and therefore not legally recorded. But, in construing the statutes of a state on which land titles depend, infinite mischief would ensue should this court observe a different rule from that which has been long established in the state; and in this case the court cannot doubt that the courts of Pennsylvania consider a justice of the Supreme Court as within the description of the act. It is of some weight that this deed was

acknowledged by the Chief Justice, who certainly must have been acquainted with the construction given to the act, and that the acknowledgment was taken before another judge of the Supreme Court. It is also recollected that the gentlemen of the bar, who supported the conveyance, spoke positively as to the universal understanding of the state on this point, and that those who controverted the usage on other points did not controvert it on this. But what is decisive with the court is that the judge who presides in the Circuit Court for the district of Pennsylvania reports to us that this construction was universally received. On this evidence the court yields the construction which would be put on the words of the act to that which the courts of the state have put on it, and on which many titles may probably depend."

See, also, *C., R. I. & P. Ry. Co. v. Dodson & Williams,* 25 Okla. 829, 107 Pac. 921.

We therefore find that the United States court for the Southern district of the Indian Territory had authority to appoint E. Dunlap guardian or curator of the estate of Davis Lowman, a minor, located in said district, and that the first question should be answered in the affirmative.

2. It follows from the foregoing conclusions that the second question should receive a like affirmative answer. Since it having been determined that the United States court for the Southern district of the Indian Territory had authority to appoint a guardian or curator of the lands of Davis Lowman located in said district, and it having been agreed in the statement of facts that the proceedings leading up to the appointment of E. Dunlap were in all things regular, and that he was legally qualified as such guardian or curator, it follows as a matter of course that he had authority to execute a valid lease for the lands of his ward for a term not exceeding five years.

3. In view of the conclusion reached on the preceding questions, the validity or invalidity of the second lease—that executed in June, 1908, for a term of three years commencing January 1, 1911—is not necessary in disposing of the instant case, and for that reason no opinion is expressed in regard to it.

4. The assessment of costs in question seems to be governed by a specific statute which reads as follows:

"When it is not otherwise provided by this and other stat-. utes, costs shall be allowed of course to the plaintiff upon a judg- ment in his favor, in actions for the recovery of money only, or for the recovery of specific, real or personal property." (Sec- tion 6115, Snyder's Statutes.)

This being an action for the recovery of specific real prop- erty, the plaintiff, having recovered judgment in the court be- low, had an absolute right to costs. No discretion was vested in the trial court on this subject. It was error to tax them to plaintiff. *St. Charles v. O'Mailey,* 18 Ill. 407; *Lultgor v. Walters,* 64 Barb. (N. Y.) 417. However, in view of the fact that upon consideration of the questions hereinbefore discussed the conclu- sion follows that the judgment of the trial court should have been for the defendant and not for the plaintiff, the defendant was entitled to costs, and this part of the judgment is correct.

5. It appears that after the appointment of Ellis Lowman as guardian by the United States court for the Eastern district of the Indian Territory and the admission of Oklahoma and the es- tablishment of county divisions therein, under the Schedule of the Constitution and the Enabling Act, the district court of Push- mataha county inherited this Lowman probate case, as successor to the United States court for the Eastern district of the Indian Territory, Antlers division, and that the case was by order, as provided by law, transferred to the county court of said county. The guardian, however, and his wards resided in McCurtain county. On the 7th day of June, 1909, the guardian presented his petition and application to the court of Pushmataha county under the provisions of section 1, c. 16, art. 3, p. 213, Sess. Laws 1907-08, praying that said cause be transferred to McCurtain county, the county of the domicile of the guardian and his wards, and where said case should have been commenced if then in- stituted. The order was made and the case transferred. Sub- sequently, on the petition of the guardian, the interest of the minors in the land in controversy was sold by order of the coun- ty court of McCurtain county and the sale confirmed, and deed duly executed to the plaintiff in error. The contention is made in behalf of the defendant in error that the guardian's deed and

all the proceedings are void, for the reason that the county court of McCurtain county never acquired jurisdiction of said cause, since the application for transfer was not made until after the expiration of 60 days "after the passage and approval" of said act; that the county court in Pushmataha county had no power to make the order of transfer after the expiration of said 60 days from the approval of that act. The statute reads as follows:

"That all those civil cases transferred from the courts of the territory of Oklahoma and the United States courts in the Indian Territory to the courts of this state as transferred by acts of Congress and accepted by the Constitution, which would have been properly triable in any court, or county or district of this state, had such suit or proceeding been commenced after the admission of this state into the Union, including records formerly belonging to the United States commissioners' courts and all papers of mayors of cities and incorporated towns having and exercising *ex officio* jurisdiction as United States commissioners in that part of the state formerly known as 'Indian Territory,' that may be in the hands of the clerks of the various district courts of that portion of the state may, including probate matters, on petition verified by the affidavit of the applicant or his attorneys of record, filed with the judge or clerk of the court where such cause is pending within sixty days after the passage and approval of this act, be transferred to the proper courts of such county or district, and that all books, records, pending cases, papers, proceedings, liens, judgments and executions pending in a justice of the peace court of any county are hereby transferred to some justice of the peace court of the county in which, if originally brought in said court, the defendant lives, or if the defendant be a nonresident, then to the county where the plaintiff lives, or the defendant has property, and when such records are transferred as above provided for, said court shall have full and complete jurisdiction of all cases and proceedings so transferred: Provided, that all transfers of cases, papers, books, proceedings, made or attempted to be made by mayors of incorporated towns to the proper court are hereby legalized and made valid."

It will be observed that this statute does not forbid the filing of a petition for removal or prohibit the court from making the order of removal after the expiration of 60 days "after the passage and approval of this act." Nor is it prescribed in the

statute that an order made after 60 days is void. No good reason appears why an order of removal should not be made as well after as within the 60 days. This is a remedial statute providing a method of distributing certain cases pending at the time of statehood to the courts of the residence of the parties. It vests in the courts named the power to make a distribution on application presented in the manner provided in the statute. It does not appear that the Legislature intended to limit the exercise of this power to 60 days. In fact, such a limitation written in the statute would in a large measure defeat the purpose of the statute. We cannot hold that this 60 days provision was or is a limitation on the power of the court to make the order of removal. This provision in the statute is merely directory and not mandatory. We therefore hold that the court under this statute had the same power to make the order of removal after 60 days as within the 60 days from the passage and approval of said act. This construction of the statute finds confirmation in the decision of this court construing section 1, c. 25, p. 37, Sess. Laws Ex. Sess. 1910, relating to the transfer of certain probate cases. *Burnett v. Durant,* 28 Okla. 552, 115 Pac. 273. Also in the construction placed on section 5, art. 1, p. 26, Sess. Laws 1907-08. *Haskell v. Reigel et al.,* 26 Okla. 87, 108 Pac. 367; *Grove v. Haskell,* 24 Okla. 707, 104 Pac. 56.

We therefore hold that the cause was properly transferred to McCurtain county.

6. It is admitted that the plaintiff's grantors were full-blood Indians, and that the land conveyed or attempted to be conveyed was inherited lands from their relative Davis Lowman, who died in August, 1907, prior to the enactment by the Congress of the United States of the act of May 27, 1908, c. 109, 35 Stat. 312, and that the plaintiff's deed executed September 16, 1909, was approved by the county court of McCurtain county, the court having jurisdiction of the settlement of the estate of the deceased allottee.

It is contended by the defendant that this deed was void and

conveyed no interest in the land in controversy for the reason that it had not been approved by the Secretary of the Interior.

Section 9 of the act of May 27, 1908, reads in part as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

The provision above quoted, and the other provisions of the act of May 27, 1908, operated to remove the restrictions against alienation of every allottee of the Five Tribes who died subsequent to the passage of said act, subject to the proviso that deeds of full-blood heirs must be approved by the county court having jurisdiction of the settlement of the estate of the deceased ancestor and those who were survived by the heirs born since March 4, 1906, but it is contended that the provisions of the act cannot be applied to any allottee who died prior to the enactment of this statute; that the phrase "that the death of any allottee * * * shall operate," etc., cannot apply to allottees then dead, but must apply only to those who shall thereafter die; that since the approval of the Secretary of the Interior was required to deeds of full-blood heirs by act of April 26, 1906, c. 1876, 34 Stat. 137, and was required up to the passage of the act of May 27, 1908, and that the plaintiff's deed, although executed in September, 1909, after the said statute was enacted, should have the approval of the Secretary of the Interior to make it a valid deed, because at the time of the death of the allottee whose land was attempted to be conveyed such approval was then required to the deed of his heirs, and on account of some indefinite and indeterminable claim to guardianship over the Indians by the Secretary. We are frank to state that this contention does not appeal to us, and this construction of the statute seems strained and against the evident purpose and intent of Congress in its enactment, which clearly was to remove, rather than extend, restrictions on the alienations of these In-

dian lands and to pass to the probate courts of the state a large measure of the power which the Secretary of the Interior had prior thereto exercised over these Indian citizens of Oklahoma.

The very first sentence in section 1 of this act of May 27, 1908, declares the status of these lands in the following language:

"That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrances, be as follows."

Then follows an enumeration of the classes from which restrictions are removed; and further along in said section it is provided:

"And nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act."

In section 6 of this act it is further provided:

"That the person and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate court of the state of Oklahoma."

The only purpose of requiring the Secretary to approve the deeds of full-blood heirs was for the protection of the full-blood grantors. This purpose we assume can be as effectively and as fully accomplished by the court having jurisdiction of the settlement of the estate of the deceased allottee as by the Secretary of the Interior burdened with the cares of a great department of government. This approval, however, must be the act of the court as distinguished from the act of the judge of the court. Mr. Justice Day, speaking for the Supreme Court of the United States in regard to these statutes, in a recent decision, said:

"The obvious purpose of these provisions is to continue supervision over the right of full-blood Indians to dispose of lands by will, and to require conveyance of interests of full-blood Indians in inherited lands to be approved by a competent court." (*Tiger v. Western Investment Company et al.*, 31 Sup. Ct. 578, 55 L. Ed. ——.)

It is well said in the brief on behalf of the plaintiff in error:

"Prior to May 27, 1908, there was no uniformity in restrictions upon alienations as to the different tribes, constituting what is known as the Five Civilized Tribes. It is, in our judgment, clearly apparent that the purposes of the act of May 27, 1908, were to establish a uniform and complete system applicable to all of the tribes; to substitute the provisions of the act of May 27, 1908, for the provisions of the act of April 26, 1906, and other legislation of like character. In other words, it was the substitution of a complete system in lieu of the fragmentary provisions theretofore existing. It is a substitute for and a repeal of the previous laws relating to the same subject-matter dealt with by this act."

If the act of May 27, 1908, was intended by Congress as a substitute for all prior laws on the subjects therein covered, and we believe it was so intended, then its enactment operated as a repeal of all former laws on the same subject although it contains no expressed words to that effect. The rule is announced by this court as follows:

"A statute revising the whole subject-matter of former acts, containing in the main the provisions of the former acts, and evidently intended as a substitute for them, although it contains no express words to that effect, operates to repeal the former acts." (*Smock v. Farmers' State Bank,* 22 Okla. 825, 98 Pac. 945.)

This act of May 27, 1908, was remedial in its nature, and there is no reason apparent to the court why the word *shall,* as used in section 9 thereof, cannot be applied to allottees who died prior to that date as well as to those who died subsequently. *Fitzpatrick v. Simonson Bros. Manufacturing Co.,* 86 Minn. 140, 90 N. W. 378; *Maysville & Lexington R. R. Co. v. Herrick,* 13 Bush (Ky.) 122, 125; *Ex parte Jordan,* 94 U. S. 251, 24 L. Ed. 123.

The only object to be accomplished by requiring the approval of deeds of full-blood heirs by the Secretary or the county court was the protection of the living and not the dead. The law in force at the time of the execution of the deed ought to govern, and not that in force at the time of the death of the allottee. This is the construction, as we are advised, placed upon this act by the Department of the Interior for the first year fol-

lowing its passage. What caused a change in the policy or construction of the act by the department, we are not advised, but we know that there was no change in the statute, nor was there any subsequent enactment by Congress authorizing it. We are constrained to hold that after the passage of the act of May 27, 1908, the approval of the Secretary of the Interior was not necessary to the deed of any full-blood heir other than the specific instances in the statutes enumerated, and, as the heirs of Davis Lowman, deceased, executing the deed to the plaintiff in error were not in the excepted class, the approval of the county court of McCurtain county of plaintiff's deed in the instant case was sufficient, and said deed so approved conveyed all the title of the heirs of the deceased allottee in said land.

Although the plaintiff in error had the legal title to the land in controversy at the time of the commencement of the action, the right to the possession thereof was in the defendant in error by virtue of the lease expiring December 31, 1910. In order for the plaintiff to prevail in this character of action, it is necessary not only that he show legal or equitable title in himself, but also the right to possession at the time of commencing the action. *Jennings v. Brown,* 20 Okla. 294, 94 Pac. 557. The judgment of the trial court should have been for the defendant.

The cause is therefore reversed and remanded to the district court of Garvin county for further proceedings consistent with this opinion.

TURNER, C. J., and KANE and DUNN, JJ., and GORDON, J., *pro tem.,* concur.

NOTE.—WILLIAMS and HAYES, JJ., being disqualified. the Governor appointed C. A. Galbraith and J. H. Gordon to sit in their places.