# McKEEVER v. COLVIN.

### No. 3662.   Opinion Filed April 11, 1912.

### (123 Pac. 156.)

**COUNTIES—Officers—Appointment and Tenure.** Section 1, c. 152, Sess. Laws 1910-11, confers upon the Governor the sole power to make appointments to fill the office of county assessor created by said act, in the various counties of the state, and said power continues until a successor of the appointee of the Governor is elected and qualified; and within such time the Governor has the power to appoint a successor to a former appointee, who resigned.

(Syllabus by the Court.)

*Error from District Court, Woods County;*
*R. H. Loofbourrow, Judge.*

Proceeding between Amon McKeever and J. W. Colvin to determine title to office.   From the judgment, McKeever brings error.   Reversed and remanded, with directions.

*H. A. Noah* and *C. H. Mauntel,* for plaintiff in error.

*E. W. Snoddy* and *T. G. Chambers,* for defendant in error.

KANE, J.   This was a proceeding in the court below, presented under section 6051, Comp. Laws 1909, upon an agreed statement of facts, for the purpose of determining which of the parties is entitled to the office of county assessor of Woods county.   The court below decided in favor of Colvin, who was appointed by the board of county commissioners of Woods county; whereupon McKeever, who was appointed by the Governor, commenced this proceeding in error for the purpose of reviewing that order.

It seems that the Governor, in pursuance of section 1, c. 152, Sess. Laws 1910-11, first appointed one Hatfield to fill the office of county assessor created by that act; that after qualifying Hatfield resigned, and thereafter the Governor appointed McKeever, who also qualified.   All of this transpired prior to the

1st day of January, 1912. The contention of the defendant in error is that the Governor, having appointed Hatfield, thereby exhausted his power and authority to fill such office, without regard to whether Hatfield died, resigned, or was removed prior to January 1, 1912; and that the power of appointment immediately devolved upon the board of county commissioners, under section 4798, Comp. Laws 1909, which provides:

"All vacancies in office, except in offices of the members of the Legislative Assembly, shall be filled by appointment. * * * In all other county offices by the county commissioners. * * *"

We cannot agree with this contention. Section 1, c. 152, provides:

"The office of county assessor is hereby created. There shall be appointed by the Governor, before the first day of January, 1912, a county assessor in and for each county in this state, whose duties and compensation shall be as hereinafter provided, and whose term of office shall commence on the first Monday in January, 1912, and continue until the first Monday in January, 1913, or until his successor is elected and qualified. A county assessor shall be elected at the general election in 1912 and every two years thereafter, and shall assume the duties of his office the first Monday in January following his election."

It seems quite clear to us that under the foregoing section the office of county assessor is appointive until after the general election of 1912; and that it was the intention of the Legislature that the sole power of appointment shall be vested in the Governor during the time the office remains appointive. It is a well-settled rule of construction that "specific provisions relating to a particular subject must govern in respect to that subject as against general provisions in other parts of the law which might otherwise be broad enough to include it." 2 Lewis' Sutherland, Stat. Const. sec. 491. The principal subject the Legislature had in mind in enacting section 1, *supra,* was the creation of the office of county assessor, and to provide for the appointment of an officer to fill the place until it became elective by the terms of the statute. The provision for the appointment by the Governor for any period was a deviation from the general law relating to filling vacancies in county offices, and clearly indicates a disposi-

tion on the part of the Legislature to make the office of county assessor an exception to the general rule, for a time at least. No good reason can be readily assigned why the Legislature should create an exception to the general law relating to filling vacancies in county offices in the case of county assessors, and limit its operations within the bounds contended for by counsel for defendant in error.

The statute on its face, after providing for the appointment, further provides that the term of office of the person appointed by the Governor "* * * shall commence on the first Monday in January, 1912," thus strongly indicating the intention of the Legislature in relation to the power of appointment. If we should hold that for any reason the first appointment proved abortive, and the Governor could not appoint again within the time limited, the above-quoted part of the statute would be stripped of any significance. The statute declares that it is the county assessor appointed by the Governor "whose term of office shall commence on the first Monday in January, 1912, and continue until the first Monday in January, 1913, or until his successor is elected and qualified," and not a county assessor appointed by the board of county commissioners. If the statutory direction is given full effect, of necessity the appointive power of the Governor must be coextensive with that time. Upon the election and qualification of a successor to the assessor appointed by the Governor, the term of office of the Governor's appointee ceases, and with it the power of the Governor to appoint; and the office becomes subject to the general law applicable to county officers. The language "before the first Monday in January, 1912," was not intended as a limitation upon the power of the Governor to make the appointment, but was merely directory, and was inserted for the purpose of avoiding an *interregnum,* in case an appointment was not made until after the time the office, by the terms of the statute, should be filled. Language of like import was held to be directory in *Maharry v. Eatman,* 29 Okla. 46, 116 Pac. 935, the court saying that "this construction of the statute finds confirmation in the decision of this court, construing section 1, c. 25,

p. 37, Sess. Laws, Ex. Sess., 1910, relating to the transfer of certain probate cases. *Burnett v. Durant,* 28 Okla. 552, 115 Pac. 273. Also in the construction placed on section 5, art. 1, c. 26, Sess. Laws 1907-08. *Haskell v. Reigel et al.,* 26 Okla. 87, 108 Pac. 367; *Grove v. Haskell,* 24 Okla. 707, 104 Pac. 56."

There are a great many authorities cited by counsel for the respective sides, most of which we have examined; but, as to our mind the determination of the case involves only the construction of section 1, *supra,* we do not deem the cases cited to be particularly in point. *Marbury v. Madison,* 1 Cranch, 137, 2 L. Ed. 60, and cases of that class, relate to entirely different situations, and involve questions of law not at all pertinent to the question necessary to be considered herein.

The judgment must therefore be reversed, and the cause remanded, with directions to proceed in conformity with this opinion.

TURNER, C. J., and HAYES and WILLIAMS, JJ., concur; DUNN, J., absent, and not participating.