## HENLEY v. DAVIS *et al.*

No. 5630.   Opinion Filed January 18, 1916.

Rehearing Denied April 4, 1916.

(156 Pac. 337.)

1.  **INDIANS—Enrollment Record—Citizenship Certificate.** A "citizenship certificate" made under regulation of the Commission to the Five Civilized Tribes and addressed to the clerk of the land office, identifying the names of persons shown thereon as those appearing upon a previously compiled census card then a part of the record of such commission, referring alone to such census card, and not purporting to certify any fact ascertained or established since the making of, or independently of said card, constitutes no part of the "enrollment records" within the scope and meaning of section 3 of the act of Congress approved May 27, 1908 (35 Stat. 312, c. 199).

2.  **SAME—Land—Restrictions on Alienation—Statutory Provisions.** The act of Congress approved May 27, 1908 (35 Stat. L. 312, c. 199), entitled "An act for the removal of restrictions from part of the lands of allottees of the Five Civilized Tribes, and for other purposes," is a revising act, and was intended as a substitute for all former acts relating to the subject of such restrictions, and operated to repeal the provisions of an act of Congress approved April 26, 1906 (34 Stat. L. 137, c. 1876), and previous congressional enactments in conflict therewith on the same subject.

3.  **SAME.** By virtue of the provisions of the act of Congress of May 27, 1908, the deed of a minor Creek freedman allottee purporting to convey her allotted lands is void, as such lands can only be conveyed by a guardian authorized in a proper proceeding in the county court.

4. **DEEDS—Indians—Restrictions on Alienation—Validity of Deed —Consideration.** A Creek freedman citizen, who subsequent to the taking effect of the act of Congress of May 27, 1908, while a minor, by deed void under the provisions of said act, attempted to convey her allotted lands, may upon arriving at majority convey said lands to the grantee named in her former void deed. Such latter conveyance, made when she is an adult, if regularly and voluntarily executed and without fraud or duress, is valid and binding upon her. Generally mere inadequacy of consideration, in the absence of fraud or duress, is not sufficient ground to avoid a deed voluntarily and regularly executed.

(Syllabus by Bleakmore, C.)

*Error from District Court, Muskogee County; R. D. de Graffenried, Judge.*

Action by Sarah Henley, *nee* Taylor, against Fred W. Davis and others. Judgment for defendants, and plaintiffs brings error. Affirmed.

*Harry G. Davis,* for plaintiff in error.

*J. B. Campbell, Jay P. Farnsworth,* and *J. M. Bradfield,* for defendants in error.

Opinion by BLEAKMORE, C. This is an action commenced in the district court of Muskogee county on March 5, 1912, by Sarah Henley against Fred W. Davis, Harry Pearsons, and O. V. Taft, for the possession of certain lands and damages for their detention, etc. The case was tried to the court, and resulted in a general finding and judgment for defendants.

The plaintiff is an enrolled Creek freedman citizen, to whom the lands involved were allotted. On August 25, 1909, in consideration of $800, she executed and delivered to Fred W. Davis a warranty deed describing 40 acres of her allotment, and on February 14, 1910, in consideration of $600, she executed and delivered to said Davis a second warranty deed describing an additional

30 acres of said allotment. On June 2, 1910, she executed and delivered to said Davis, for $1 and other valuable considerations, a third warranty deed purporting to convey the 70 acres described in the two former conveyances. Plaintiff had enjoyed exceptional educational advantages for one of her class, having attended Oberlin University in the State of Ohio, where she was a student at the time of the transactions in question. She received and used the consideration recited in her deeds.

On June 30, 1910, Fred W. Davis, to secure a present loan to him of $1,200, executed and delivered to the defendants Pearsons and Taft a mortgage covering the lands described in the deeds of the plaintiff to him.

Plaintiff contends that at the time of the execution of the deeds of August 25, 1909, and February 14, 1910, she was a minor, under the age of 18 years, as shown by the enrollment records of the Commissioner to the Five Civilized Tribes, and therefore said deeds were void and ineffectual to convey title to the lands described therein; that her deed of June 2, 1910, to said Davis, purporting to convey the entire 70 acres of land described in the two prior deeds, was intended to be and was in fact a mere attempted ratification of said former conveyances, and is therefore void.

The defendants Pearsons and Taft contend that the plaintiff is estopped to assert the invalidity of the mortgage of Davis to them or to set up any adverse claim to the premises in controversy against them, for the reason that they informed her that they contemplated making the loan to Davis to be secured by mortgage on said land prior to the execution of said mortgage, and that plaintiff represented to them that she was more than 18 years of age,

that she had sold the land to Davis and received every dollar of the consideration, and was fully satisfied with the transaction.

The established rule in this jurisdiction, by virtue of the provisions of section 6 of an act of Congress approved May 27, 1908 (35 Stat. L. 312, c. 199), is that the deed of a minor freedman allottee attempting to convey his allotted lands is void. *Tirey v. Darneal,* 37 Okla. 606, 133 Pac. 614; *Tirey v. Darneal,* 37 Okla. 611, 132 Pac. 1087; *Reid v. Taylor,* 43 Okla. 816, 144 Pac. 588.

In support of her contention as to her minority plaintiff introduced in evidence, as the enrollment record, a duly certified copy of her census card, by which it is conceded her age is shown to have been seven years in May, 1899. It appears therefrom that she had not arrived at majority at the time of the execution of the deeds of August, 1909, and February, 1910.

Defendants offered in evidence as a part of the enrollment records of the Commissioner to the Five Civilized Tribes a certified copy of what is known as a citizenship certificate, by which it appears that the plaintiff was eight years of age on June 13, 1899, said certificate being as follows:

"Muskogee, I. T.                    Application No. 1193.
            "Department of the Interior.
        "Commission to the Five Civilized Tribes,
                "Creek Nation.
"To the Clerk of the Land Office at Muskogee:

"This is to certify that the name of Rachel Taylor, age 55, and the names of the following six persons whom he represents, to wit:

| Names. | Relationship to Person First Named. | Age. |
|---|---|---|
| Mariah Taylor | Dau. | 19 |
| Adeline    " | " | 17 |
| Annie    " | " | 15 |
| Emily    " | " | 15 |
| Griffin    " | Son | 13 |
| Sarah    " | Dau. | 8 |

"All appear on freedman census card of the Creek Nation, field No. 1266, of record in the office of the Commission to the Five Civilized Tribes.

"Muskogee, Indian Territory, June 13, A. D. 1899.

"TAMS BIXBY, *Acting Chairman.*"

In our opinion the citizenship certificate constitutes no part of the enrollment records. It appears to be an authoritative statement made under regulation of the commission addressed to the clerk of the land office identifying the names of the persons shown thereon as those appearing upon a previously compiled census card, then a part of the enrollment record. The certificate refers alone to such census card (being the one introduced in evidence here), and obviously was prepared solely from the date thereon. It does not purport to certify any new or additional facts established independently of those already ascertained by the commission and evidenced by the census card.

In *Scott v. Brakel et al.*, 43 Okla. 655, 143 Pac. 511, it is held by this court:

"The 'enrollment records of the Commissioners to the Five Civilized Tribes, which section 3 of the act of Congress, approved May 27, 1908 (35 Stat. L. 312, c. 199), declares 'shall hereafter be conclusive evidence as to the age' of any enrolled citizen or freedman of said tribes,

embrace and include all of the testimony and exhibits tending to establish age that were in evidence before the commission and the conclusions of the commission based thereon, from the date of the application for enrollment of any particular allottee up to the time of the ascertainment by the commission as to whether the name of such allottee was entitled to be placed upon the roll of the nation in which he claimed citizenship."

In the body of the opinion it is said:

"It is true that in many instances the census card consists of an entry of a summary of the evidence of the applicant at the time the application was made, whilst in other instances, where the testimony of the applicant was not taken down by a stenographer and subsequently transcribed, the entries consisted of the epitomized statements of the witnesses reduced to census card form. In such cases the census card is of necessity the enrollment record, and where the Commissioner to the Five Civilized Tribes certifies that the census card constitutes the entire enrollment record as to the person whose name appears thereon, that will be sufficient. There are many instances where the census card constitutes substantially the complete enrollment record. In such cases, it is admissible as conclusive evidence as to age, not as a census card, but as 'the enrollment record,' when so certified by the proper officer."

In the light of the authority cited it must be held that the census card introduced in evidence constituted the "enrollment record" of plaintiff. and as such is conclusive evidence of her minority when she executed the deeds of August 25, 1909, and February 14, 1910, and of her majority when she made the conveyance of June 2, 1910.

At the time of the execution of the deed of June 2, 1910, by the plaintiff to Davis, she had arrived at her majority; and it is conceded that all restrictions upon the alienation of her allotted land, including minority, had

been removed, and that she was then competent to convey said lands by virtue of both the federal and state law. But it is contended that such deed is void for the reason that it is a mere ineffectual attempt to ratify her two former deeds purporting to convey said lands to the same grantee at a time when restrictions upon the alienation thereof existed. We have held that by virtue of the provisions of section 6 of the act of Congress of May 27, 1908, the two deeds executed during her minority are void, for the reason that they were not made through the instrumentality of, and upon proper proceeding in, the county court.

Plaintiff urges that having previously attempted to convey said lands while a minor, in violation of the federal statute, she could not thereafter, when such statutory restraint had been removed, make a valid conveyance of said lands to the same grantee. In support of this contention it is insisted that said deed was made in violation of the following controlling provision of section 19 of the act of Congress approved April 26, 1906:

"And every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby, declared void."

With the contention of plaintiff in this regard we are unable to agree. By act of Congress approved April 21, 1904 (c. 1402, 33 Stat. L. 189), it is provided:

"And all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed."

We are of opinion that the only restraints upon alienation of the lands involved herein are contained in the act of Congress of May 27, 1908, which is a revising act, and

was intended as a substitute for the provisions of all prior laws on the same subject embraced therein.

This doctrine is announced, and certain provisions of the federal statutes necessary to be considered are reviewed in *MaHarry v. Eatman*, 29 Okla. 46, 116 Pac. 935, a case wherein it was contended that the deed of full-blood Indian heirs of an allottee who died subsequent to the act of Congress of April 26, 1906, and prior to the taking effect of the act of May 27, 1908, was invalid without the approval of the Secretary of the Interior. Disposing of such contention the court said:

"We are frank to state that this contention does not appeal to us, and this construction of the statute seems strained and against the evident purpose and intent of Congress in its enactment, which clearly was to remove, rather than extend, restrictions on the alienation of these Indian lands and to pass to the probate courts of the state a large measure of the power which the Secretary of the Interior had prior thereto exercised over these Indian citizens of Oklahoma.

"The very first sentence in section 1 of this act of May 27, 1908, declares the status of these lands in the following language: 'That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrances, be as follows.'

"Then follows an enumeration of the classes from which restrictions are removed; and further along in said section it is provided: 'And nothing herein shall be construed to impose restrictions removed from land by or under any law prior to the passage of this act.'

"In section 6 of this act it is further provided: 'That the person and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically pro-

vided by law, be subject to the jurisdiction of the probate court of the State of Oklahoma.'

"The only purpose of requiring the secretary to approve the deeds of full-blood heirs was for the protection of the full-blood grantors.  This purpose, we assume, can be as effectively and as fully accomplished by the court having jurisdiction of the settlement of the estate of the deceased allottee as by the Secretary of the Interior, burdened with the cares of a great department of government.  This approval, however, must be the act of the court as distinguished from the act of the judge of the court.  Mr. Justice Day, speaking for the Supreme Court of the United States in regard to these statutes, in a recent decision, said:  'The obvious purpose of these provisions is to continue supervision over the right of full-blood Indians to dispose of lands by will, and to require conveyance of interests of full-blood Indians in inherited lands to be approved by a competent court.'  *Tiger v. Western Investment Company et al.* [221 U. S. 286], 31 Sup. Ct. 578, 55 L. Ed. 738.

"It is well said in the brief on behalf of the plaintiff in error:  'Prior to May 27, 1908, there was no uniformity in restrictions upon alienations as to the different tribes, constituting what is known as the Five Civilized Tribes. It is, in our judgment, clearly apparent that the purposes of the act of May 27, 1908, were to establish a uniform and complete system applicable to all of the tribes; to substitute the provisions of the act of May 27, 1908, for the provisions of the act of April 26, 1906, and other legislation of like character.  In other words, it was the substitution of a complete system in lieu of the fragmentary provisions theretofore existing.  It is a substitute for and a repeal of the previous laws relating to the same subject-matter dealt with by this act.'

"If this act of May 27, 1908, was intended by Congress as a substitute for all prior laws on the subjects therein covered, and we believe it was so intended, then its enactment operated as a repeal of all former laws on the

same subject, although it contains no express words to that effect. The rule is announced by this court as follows: 'A statute revising the whole subject-matter of former acts, containing in the main the provisions of the former acts, and evidently intended as a substitute for them, although it contains no express words to that effect, operates to repeal the former acts.' *Smock v. Farmers' State Bank,* 22 Okla. 825, 98 Pac. 945."

In *Lewis v. Allen,* 42 Okla. 584, 142 Pac. 384, the plaintiff, a Chickasaw allottee, attempted during her minority to convey her land. After reaching majority she executed a deed conveying the same land to her former grantee. She then sued to cancel the second deed alleging that it was procured to supplement the first void deed, that the consideration was inadequate, and that said deed was made during the existence of the tribal government for a consideration less than the appraised value of the land, and was therefore void. The court stated:

"Again it is urged that the deed is void because of the provisions of section 16 of the Supplemental Agreement (Act July 1, 1902, 32 St. L. 641), which provides that the allottee shall not alienate his land at any time before the expiration of the Choctaw and Chickasaw tribal governments, for less than the appraised value, and that the tribal governments of said tribes were in full force and effect at the time of the second deed (chapter 1876, sec. 28, of act of Congress of April 26, 1906), and, the $500 being less than the appraised value of the land, the deed is on that account void. It is not denied that this provision of section 16 of the Supplemental Agreement of 1902, forbidding the alienation of the land by allottees during the existence of the tribal government for less than the appraised value, was a restriction against alienation. It is contended that this restriction, as well as others, against the alienation of the land allotted to Mrs. Lewis, she being one-eighth Indian blood, was removed by the act of May

27, 1908 (35 St. L. p. 312), section 1 of which reads in part as follows: 'That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees, enrolled as intermarried whites, as freedmen, and as mixed-blood Indians, having less than half Indian blood, including minors, shall be free from all restrictions.' "

It is said by the court in *MaHarry v. Eatman*, 29 Okla. 46, 116 Pac. 935:

"If the act of May 27, 1908, was intended by Congress as a substitute for all prior laws on the subjects therein covered, and we believe it was so intended, then its enactment operated as a repeal of all former laws on the same subject, although it contains no express words to that effect."

"We therefore conclude that section 16 of the Supplemental Agreement was no longer applicable to the class of allottees to which Mrs. Lewis belonged, and that all restrictions against the alienation of her land were removed by the act of May 27, 1908."

Sustaining the rule announced, see Black on Statutory Construction (1st Ed.) 116; *Roche v. Jersey City*, 40 N. J. Law, 257; *Ellis v. Paige*, 1 Pick. (18 Mass.) 43; *Oleson v. Green Bay & Lake Peplin R. Co.*, 36 Wis. 383; *Murdock v. Memphis*, 20 Wall. 590, 22 L. Ed. 429.

It is further contended that the consideration recited in the deed, "$1 and other valuable considerations," is insufficient to support the conveyance of June 2, 1910. The question of fraud on the part of defendants does not enter into this case. Defendants are in possession under the deed. The rule is well established that a voluntary con-

veyance of property completely executed, in the absence of fraud or duress, is valid as between the parties. In *Lewis v. Allen, supra,* it is held:

"Inadequacy of consideration alone is not sufficient to justify a court of equity in setting aside a deed regularly executed." Devlin on Deeds (3d Ed.) sec. 806; *Barker v. Wiseman,* 51 Okla. 645, 151 Pac. 1047.

In *Hartman v. Butterfield Lbr. Co.,* 199 U. S. 335, 26 Sup. Ct. 63, 50 L. Ed. 217, involving the validity of a conveyance executed by a prospective patentee of government land after receiving his patent and pursuant to a contract violative of the federal statute, the court said:

"For the purpose of this case it may be conceded that the contract made before the patent was, by virtue of the policy of the United States as disclosed in its statutes, void, and could not have been enforced by the Norwood and Butterfield Company, but the contract was not inherently vicious or immoral. It was simply void because in conflict with the federal statutes. *Anderson v. Carkins,* 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272. When the patent issued the full legal title passed to the patentee. He could do with the land that which he saw fit, sell or give it away, and if he voluntarily conveyed it he could not thereafter repudiate the conveyance. He may well have thought that having received money from the company to enable him to pay for the land it was equitable that he should convey that interest which he had agreed to convey. At any rate he had a right to exercise a choice in the matter, and, having exercised it, he at least cannot complain. Whether the government could challenge the conveyance we need not determine, for if it had any right to interfere, it has not chosen to do so. It is generally true that an executed contract, voluntarily executed, without fraud or duress, is binding and cannot be repudiated by the party who executed it."

The views herein expressed in no way conflict with the holding in the case of *Carter v. Prairie Oil & Gas Co. et al.,* 58 Okla. —, 160 Pac. 319.. The conveyances involved in that case were made prior to the passage of the act of May 27, 1908, while the provisions of the act of April 26, 1906, applicable to such transactions were in force; and the controlling facts in the two cases are dissimilar.

The only restriction upon alienation of the allotted land of the plaintiff herein imposed or continued in force by the act of May 27, 1908, was that which rendered her personally powerless to contract with relation thereto while a minor as defined by that act. After she became 18 years of age, as shown by the enrollment records of the Commissioner to the Five Civilized Tribes, that restriction was, *ipso facto,* removed, and that act having spent its force, so far as her allotment and its future disposition were concerned, it became inoperative. The deed of June 2, 1910, is apparently a separate and independent conveyance, voluntarily made by the plaintiff, the execution of which was perhaps prompted by a sense of her moral obligation to defendant. The land was then hers, free from all restraint upon alienation, and she could part with it to whomsoever she chose, upon any lawful consideration she saw fit to accept, or without consideration. When she thus conveyed it by proper deed for the recited consideration of "$1 and other valuable consideration," such conveyance was binding upon her.

It is unnecessary to consider other questions presented by the assignment of errors. The judgment of the trial court should be affirmed.

By the Court: It is so ordered.