**ARMSTRONG v. GOBLE et al.**

No. 9287—Opinion Filed Aug. 27, 1918.

Rehearing Denied Dec. 3, 1918.

(176 Pac. 530.)

1. **Indians — Lands—Confirmatory Deeds— Validity.**

Minnie B. Armstrong, a three-eighths blood Cherokee, during her minority executed a deed to B. G. Goble and Elizabeth Goble, his wife, to certain land allotted her as a member of the Cherokee Nation, for a valuable consideration. After she attained her majority she executed certain other deeds to the same land to B. G. Goble and J. P. O'Meara for the purpose of perfecting the title to said land. Held, that the deeds executed by Minnie B. Armstrong after she attained her majority, being voluntary conveyances for the purpose of perfecting the title to said land, were valid and binding deeds and not subject to cancellation by a suit instituted for that purpose by Minnie B. Armstrong; there being no fraud, duress, or mistake in the execution of said instruments proven.

2. **Indians—Lands—Voluntary Alienation.**

A three-eighths Cherokee Indian, after reaching his or her majority. can make a voluntary alienation of his or her allotted lands; and such conveyance is valid and binding against the party making it.

(Syllabus by Davis, C.)

Error from District Court, Washington County; R. B. Boone, Judge.

Action to quiet title by Minnie B. Armstrong against B. G. Goble and others. Judgment for defendants and plaintiff appeals Affirmed.

Norman Barker and B. T. Hainer, for plaintiff in error.

Ethel K. Childers and J. P. O'Meara, for defendants in error.

Opinion by DAVIS, C. The parties to this action will be referred to as they appeared in the lower court. This action was begun in the district court of Washington county, Okla., by Minnie B. Armstrong for the purpose of canceling certain deeds and instruments that cover the southeast quarter of the northeast quarter and the east half of the northeast quarter of the northeast quarter of section 1, township 26 north, range 13 east. in the Indian Territory, now lying and situate in Washington county, Okla. Minnie B. Armstrong, the plaintiff, is a three-eighths blood Cherokee, and the foregoing described property was allotted to her as her part of the allottable land of the Cherokee Nation. The plaintiff was duly enrolled in the Cherokee Nation roll, she being No. 31089. While the plaintiff was still a minor her father became indebted to a firm in Bartlesville, Okla., known as Bradley & Bryan. for groceries and merchandise purchased for the use and benefit of his family. Henry Armstrong and Jane Armstrong, his wife, and Minnie B. Armstrong, the plaintiff herein, executed a mortgage to the firm of Bradley & Bryan for the purpose of securing said indebtedness, which amounted to approximately $961. The mortgage so executed covered the land heretofore described. There were various deeds and instruments

executed by the plaintiff to B. G. Goble and Elizabeth Goble in connection with this land. It seems that the first was a contract executed on the 3d day of February, 1909, at which time it is conceded that the plaintiff was a minor. The contract in substance provided that B. G. Goble was to deed to the plaintiff lot 8 in block 14, Armstrong's Section addition to the city of Bartlesville, Okla., and as a consideration for said property, Minnie B. Armstrong was to execute a deed to the property heretofore described. B. G. Goble agreed to assume and pay an indebtedness due the firm of Bradley & Bryan, which amounted to $961, and Minnie B. Armstrong was to pay the sum of $1,000 to B. G. Goble as a portion of the consideration for lot 8 in block 14, in Armstrong's Section addition to the city of Bartlesville; also to execute a deed to the real estate heretofore described. B. G. Goble paid the indebtedness due to Bradley & Bryan, and the plaintiff paid B. G. Goble the sum of $1,000 and went into possession of lot 8, in block 14. There was a mortgage on the house located on this lot which was to be paid by the plaintiff. On the 20th day of May, 1910, in furtherance of this arrangement, Minnie B. Armstrong executed a warranty deed to her allotment heretofore described, and on the same day the plaintiff executed to B. G. Goble a mortgage on the house located on lot 8 in block 14, Armstrong's Section addition. This mortgage was executed to Mr. Goble for the purpose of securing him in case the plaintiff should refuse to perfect his title to the allotment after the plaintiff became 18 years of age. This mortgage was subsequently released by Mr. Goble when the plaintiff complied with the conditions prescribed therein. On the 21st day of May, 1910, Minnie B. Armstrong executed a deed to lot 8 in block 14, Armstrong's Section addition to the city of Bartlesville, to Jane Armstrong, her mother. The house was occupied by the Armstrong family until it was sold for the purpose of satisfying the mortgage that was against it. After the plaintiff attained her majority, she executed deeds and conveyances on the land heretofore described to B. G. Goble, William Ira Goble, and J. P. O'Meara. The instruments that were executed after the plaintiff attained her majority were executed for the purpose of perfecting the title to the land and to enable B. G. Goble and William Ira Goble to secure a loan thereon. This action is for the purpose of setting aside all of these conveyances and quieting the title to the land in Minnie B. Armstrong.

There are two grounds urged by the plaintiff for the cancellation of these instruments.

One is that the deed and conveyances executed after Minnie B. Armstrong attained her majority were for the purpose of confirming the deeds and instruments executed during her minority which were all illegal and void, and prohibited by law, and therefore that the deeds subsequently executed for the purpose of confirming these instruments are null and void. The second ground urged is that the deeds were obtained by duress, in that they were induced by certain alleged threats made by B. G. Goble concerning the father of Minnie B. Armstrong.

It is unnecessary to notice the pleadings of the defendants Eddy & Clapp, J. P. O'Meara, and E. R. Kemp. The answer of B. G. Goble set out, among other things, that the property acquired by him from Minnie B. Armstrong was acquired for a valuable consideration and that the conveyances made by the plaintiff after she attained her majority were made voluntarily and were not the result of any duress on his part. On these issues the cause was submitted to the court and a judgment was rendered in favor of the defendants and against the plaintiff. From this judgment an appeal is prosecuted to this court. We have made a careful examination of the evidence in this case and find that the judgment of the court is amply sustained by the evidence. The evidence on the part of Minnie B. Armstrong shows that she executed the deeds after she attained her majority for the purpose of perfecting the title of Mr. Goble and his son, William Ira Goble, as heir at law of Elizabeth Goble, deceased, in the property in question, and that it was her intention from the time that the first contract was entered into to perfect this title when she attained her majority. There is absolutely no proof in this record that any of the deeds were obtained by duress, but, on the contrary, the evidence shows that the plaintiff expressed a willingness to sign any deeds or instruments that were necessary to perfect the title to the land in question. The plaintiff is a three-eighths blood Cherokee, and after she attained her majority, she had a right to make a voluntary conveyance of any property that she might possess, even though said conveyance should be supported by a moral consideration only. Hence the deeds executed and delivered after she became 18 years of age for the purpose of perfecting the title to the lands in question, being voluntary conveyances, the same are now binding upon her, in the absence of fraud, duress, or mistake.

This is no longer an open question in this state. In the case of Henley v. Davis, 57

Okla. 45, 156 Pac. 337, Commissioner Bleakmore stated the rule as follows:

"The only restriction upon alienation of the allotted land of the plaintiff herein, imposed or continued in force by the act of May 27, 1908, was that which rendered her personally powerless to contract with relation thereto while a minor as defined by that act. After she became 18 years of age, as shown by the enrollment records of the Commission to the Five Civilized Tribes, that restriction was, ipso facto, removed, and that act having spent its force, so far as her allotment and its future disposition were concerned, became inoperative. The deed of June 2, 1910, is apparently a separate and independent conveyance, voluntarily made by the plaintiff, the execution of which was perhaps prompted by a sense of her moral obligation to defendant. The land was then hers, free from all restraint upon alienation, and she could part with it to whomsoever she chose, upon any lawful consideration she saw fit to accept, or without consideration. When she thus conveyed it by proper deed for the recited consideration of '$1 and other valuable considerations,' such conveyance was binding upon her."

The doctrine announced in the foregoing case has been cited with approval in the case of McKeever v. Carter et al., 53 Okla. 360, 157 Pac. 65, in an opinion written by Judge Hardy; also in the case of Kinzer v. Davis, 64 Okla. 264, 167 Pac. 753.

As the position taken by counsel for plaintiff has been foreclosed by the opinions heretofore rendered by this court and cited above, a further discussion of this case could serve no useful purpose. Suffice it to say that the contention of plaintiff as to fraud and duress was decided adversely to contention by the trial court, and as we are of the opinion that judgment and decree of the court on this question is in accord with the evidence, we find no occasion to disturb his finding.

We are therefore of the opinion that the judgment of the district court of Washington county should in all things be affirmed.

By the Court: It is so ordered.