HUNTLEY *v.* HUNTLEY & Another.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

Argued March 17, 18, 1885.—Decided April 6, 1885.

C. bought an undivided one third interest in a stage company, intending that S. should have one-half of the one-third, and, before the purchase, informed S. of such intention. At the time there was an unsettled account between C. and S., in respect of services rendered by S. to C., and of certain business in which they were both interested. After the purchase, C. agreed verbally with S. that S. should have the one-sixth at the price C. had paid for it, any amount due by C. to S. to be applied towards payment for the one-sixth, the ownership of it by S. to commence at once. Afterwards, the four owners of the property, of whom S. and C. were two, executed a paper, under seal, in which the interests of the four were defined, S. and C. being stated to be the owners of one-third ; and all, including C., thereafter recognized S. as owning one-sixth, subject, as between S. and C., to the liability of S. to reimburse C. what he had paid for such one-sixth : *Held,*

(1.) The contract was executed, and S. was put in possession, and the statute of frauds, 29 Car. 2, ch. 3, § 17, did not apply.

(2.) S. was entitled to have credit, on his purchase of the one-sixth, for what C. owed him on the accounts aforesaid ; and C. was entitled to recover from S. the residue of what he had paid for the one-sixth.

This was a bill in equity for an account and for other relief. For several years prior to June 27, 1874, the appellee, Charles C. Huntley, was engaged on numerous routes in the West and Northwest in the business of transporting the mails

of the United States and passengers. On some of those routes S. S. Huntley was interested with him, while on others he was his general manager and agent, with unrestricted authority to conduct the business as, in his judgment, was best for his principal. Among the companies in which C. C. Huntley had an interest were the Northwest Stage Company—engaged in transporting mails and passengers on routes in the State of Oregon, and in the Territories of Utah, Idaho and Washington —and the Oregon and California Stage Company, which was engaged in like business on the route from Oraville, California, to Portland, Oregon. In the former company, Bradley Barlow and James W. Parker each had an undivided interest of one-third, while C. C. Huntley and Adam E. Smith had each an undivided interest of one-sixth; in the latter, Barlow, C. C. Huntley, Parker and one Sanderson had each an undivided interest of one-fourth.

On the 27th day of June, 1874, Parker, by bill of sale, transferred to C. C. Huntley his interest in the property and assets of both those companies. The consideration paid was $75,000, for which the vendee executed his several promissory notes to Barlow, who indorsed them to Parker.

On the 22d day of December, 1874, the following instrument of writing was executed by the parties thereto:

"Know all men by these presents, that whereas Bradley Barlow is the owner of one half of the stock, property, and effects of what was known as the Northwest Stage Company, and S. S. and C. C. Huntley are the owners of one-third of said property, and Adam E. Smith is the owner of one-sixth of said property, and each of the said parties share respectively in the above proportions in all the mail routes lately operated by said company, and are to share in the future on all those routes in the above proportions in the ownership, profits, losses, and expenses appertaining thereto or incident to the obtaining said mail routes, and it is agreed between us that the said Barlow shall have full power and authority to collect and pay on said routes during the present contract term for the benefit of the said parties herein named in the proportions to each

party hereinbefore stated, and that full powers of attorney in all cases shall be made and delivered to the said Barlow to collect all mail pay on all routes now owned or hereinafter acquired by the aforesaid parties, or either of them, in the territory embraced by the service of the late Northwest Stage Company.

" In witness whereof, we have hereunto set our hands and seals; this 22d day of December, A.D. 1874.

BRADLEY BARLOW.     [SEAL.]

C. C. HUNTLEY.      [SEAL.]

S. S. HUNTLEY.      [SEAL.]

ADAM E. SMITH.      [SEAL.]

" In the presence of—

J. L. SANDERSON."

Shortly after the execution of that paper, C. C. Huntley, for $30,000, sold to Barlow one-half of the interest in the Northwest Stage Company which the former had purchased from Parker.

The present suit was instituted by S. S. Huntley on the 14th day of December, 1878, against C. C. Huntley, Barlow, and Smith. The bill alleged, among other things, that plaintiff and defendants were the owners of the stock, property and effects of the Northwest Stage Company, and that their respective interests were distinctly set forth and agreed upon in the before-mentioned writing of December 22, 1874; that Barlow had purchased Smith's interest, and, under the authority given him, had collected all the mail pay earned by the company for its contract term ending June 30, 1878, but had not made a final settlement, in respect of such collections, with those interested with him; that he had, also, sold the property of the company for $75,000, but had not fully accounted therefor; that C. C. Huntley denied that plaintiff had any interest in that property or in its proceeds, and, unless restrained, would collect and appropriate to his own use all the proceeds and profits arising from the one-third interest which originally stood in the name of C. C. and S. S. Huntley, one-half of which, that is, one-sixth of the entire property, belonged to plaintiff.

The prayer of the bill was for an ascertainment of the amount in Barlow's hands, in respect of the said one-sixth interest, and that plaintiff have a decree for such sums as may be justly due him.

C. C. Huntley, in his answer, denied that plaintiff ever acquired any interest in the purchase from Parker, or that the paper of December 22, 1874, of the signing of which he had no recollection, was intended to be anything more than a declaration, or admission, of the parties that Barlow was authorized to receive the money that might become due to the company from time to time. He said: "I did not in said paper-writing intend to admit, nor have I ever admitted, nor do I now admit, but, on the contrary deny, that the said plaintiff was, or is, or was to be, an equal owner with me in the said one-third interest in said Northwest Stage Company, its property, profits, assets, &c., except in the event of the repayment to me of the said sum of $45,000, so expended in the purchase of said shares as aforesaid, with interest thereon; and, although no agreement to that effect was ever entered into, I have always been, and am now, willing that the said plaintiff shall have all the profit that has been made or derived in respect of one-sixth interest in said Northwest Stage Company, and said one-fourth interest in said Oregon and California Stage Company, since the 1st day of July, 1874, provided there be first repaid to me the said cost price of said purchase, to wit, the said sum of $45,000, with interest from June 27, 1874."

By the decree of the court below, in special term, it was adjudged that plaintiff recover of the defendant Barlow one-sixth of the property and money, in his hands, of the North-west Stage Company, and the latter was enjoined from paying to C. C. Huntley any part thereof. The cause was referred to an auditor to ascertain the amount of plaintiff's interest, and to state all proper and necessary accounts. Upon appeal to the general term that decree was reversed with costs. The plaintiff below appealed to this court.

*Mr. William F. Mattingly* and *Mr. Enoch Totten* for appellant.

*Mr. J. Hubley Ashton* and *Mr. Walter D. Davidge* (*Mr. Nathaniel Wilson* was with them) for appellees.

MR. JUSTICE HARLAN delivered the opinion of the court. After stating the facts in the foregoing language, he continued:

While there is some conflict in the testimony as to the circumstances attending the purchase by C. C. Huntley of Parker's interest in these companies, we are of opinion upon a careful examination of the evidence:

1. That the purchase by C. C. Huntley was pursuant to an understanding between him and Barlow, that the latter should have one-half of the Parker interest in the Northwest Stage Company, and with the purpose, on the part of C. C. Huntley, that S. S. Huntley, should have the other half;

2. That before such purchase, S. S. Huntley was informed by C. C. Huntley of the latter's intention to let him have one-half of that interest;

3. That, at the time of such purchase, there was an unsettled account between C. C. Huntley and S. S. Huntley in respect as well of services rendered by the latter as agent and general manager for the former, as of mail contracts and business in which they were jointly interested, other than those relating to routes not occupied by the Northwest Stage Company or other companies with which Barlow was connected;

4. That C. C. Huntley, in execution of his avowed purposes with reference to S. S. Huntley, verbally agreed with the latter, while they were together in the west in the summer or fall of 1874, after the purchase from Parker, that he should have one-half of the original Parker interest in the two companies— that is, the remaining one-sixth interest in the Northwest Stage Company, and one-eighth interest in the other company— at the price which C. C. Huntley had paid for them; the amount, if any, due to S. S. Huntley, on account of the before-mentioned services and contracts, to be applied in payment as far as it would go for the interests so transferred to him;

5. That the ownership of those interests by S. S. Huntley was not to be deferred until a settlement of accounts between him and C. C Huntley was had, but was to take effect as of

July 1, 1874, when the new contract term of those companies commenced;

6. That the writing of December 22, 1874, was executed because of the then contemplated absence of C. C. Huntley in Europe for the benefit of his health, and to show the interest which S. S. Huntley had previously acquired, and then, under the agreement with C. C. Huntley, actually had in the property and business of the Northwest Stage Company;

7. That, thereafter, all parties concerned in the affairs of that company, including C. C. Huntley, recognized and treated S. S. Huntley as the owner of one-sixth interest in its property and assets, subject, however, so far as C. C. Huntley was concerned, to the liability of S. S. Huntley to reimburse him for the amount which that interest had cost.

In behalf of the appellee Huntley, it is contended, that the verbal agreement, upon which appellant relies as the foundation for his claim, is void under § 17 of the statute of 29 Car. II. ch. 3, which is in force in the District of Columbia, and which provides that " No contract for the sale of any goods, wares, and merchandise for the price of ten pounds sterling, or upward, shall be allowed to be good, except the buyer shall accept part of the goods sold, and actually receive the same, or give something in earnest to bind the bargain, or in part payment, or that some note or memorandum, in writing, of said bargain be made and signed by the parties, to be charged by such contract, or their agents, thereunto lawfully authorized." Kelty's Eng. Statutes, 242, Thompson's Digest, 221.

The argument in support of this proposition is: That the Northwest Stage Company was a species of partnership with joint-stock divided into transferable shares, which could be disposed of by the owner without the consent of his partners; that such shares were substantially like stock in corporations or regular joint-stock companies; and that the alleged verbal sale of an interest in that company was void under the foregoing statute, because, as is claimed, the words " goods, wares, and merchandise," as therein used, properly embrace not merely palpable personal property, having an intrinsic value, but also stocks in chartered corporations, shares or interests in joint-

stock companies, or private partnerships having the incidents of such companies, notes, checks, bonds, and other evidences of value.

Without determining whether this statute governs the rights of the parties, or whether this interpretation of its provisions is sustained by the weight of authority, or whether the writing of December 22, 1874, is not itself a sufficient memorandum in writing of the sale in question, it is enough to say that the contract between C. C. Huntley and S. S. Huntley was so far executed that the rights and obligations of the parties cannot be affected by the statute. To the extent that it was possible or necessary in respect of property of this character, the vendee was placed in possession of that which he purchased. This is shown by the evidence of several witnesses, and is established by the paper of December 22, 1874, which declares that S. S. and C. C. Huntley *are* the *owners* of one-third of the stock, property, and effects of the Northwest Stage Company, and, as such and to that extent, *are to share* in all the mail routes then lately operated by that company, and *to share, in the future,* in the profits, losses, and expenses appertaining thereto. There is some evidence tending to show that when this paper was executed C. C. Huntley was in poor health, but it falls short of proving that he was incapable, in law, of becoming a party to such an instrument. Nor does his answer assert any such incapacity as a ground of defence. Besides, that writing is in accordance with the understanding reached between him and S. S. Huntley prior to its execution.

The decrees, in general and in special term, are, in our judgment, erroneous; the former, because it denied all relief to the plaintiff; and the latter because it proceeded upon the ground that the evidence showed that S. S. Huntley had fully paid for the interest sold and transferred to him by C. C. Huntley. The case should go to an auditor, to ascertain the amount, if any, fairly and justly due S. S. Huntley from C. C. Huntley at the time of his purchase from C. C. Huntley—such amount to be applied in payment of S. S. Huntley's indebtedness to C. C. Huntley, on account of the purchase from the latter of one-half of the Parker interest in the Northwest Stage Com-

pany.　And if C. C. Huntley was not indebted to S. S. Huntley at that date, then the former will be entitled to be reimbursed out of the funds in the hands of Barlow, for all that he paid for the one-sixth part sold to S. S. Huntley, with interest thereon from the time of the purchase from Parker; the balance, if any, to go to S. S. Huntley. Such further decree should be rendered after the report of the auditor as the facts thus disclosed will justify or require.

*The decree below is reversed, with direction for such proceedings as will be consistent with this opinion.*