## CASEY v. BINGHAM *et al.*

No. 2784.    Opinion Filed May 20, 1913.

(132 Pac. 663.)

1. **INDIANS—Surplus Allotment of Intermarried Citizens—Contract to Sell—Validity.** A contract by an intermarried member of the Chickasaw Tribe of Indians to sell a portion of his surplus allotment when he should have filed the land, made before he filed, but subsequent to Act April 21, 1904, c. 1402, 33 St. at L. 189, which provided that "all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed," was not valid.

2. **SAME—Deed—Validity.** Where a member by intermarriage of the ·Chickasaw Tribe of Indians, subsequent to Act April 21, 1904, c. 1402, 33 St. at ʼL. 189, but prior to filing on the land, entered into a contract to convey his surplus when he should have filed and received a portion of the consideration, and, after˙ he had filed, executed a warranty deed as stipulated in the contract and received the appraised value of the land, the deed was valid and conveyed title to the grantee therein, notwithstanding the previous invalid contract.

3. **SAME—Statutes—Construction—Surplus Allotment of Intermarried Citizen—Deed—Validity.** The provision of Act April 26, 1906, c. 1876, sec. 19, 34 St. at L. 144, that "every deed executed before or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is. hereby declared void," was not retroactive and did not affect deeds executed prior to its passage.

4. **SAME—**The provision of section 5 of Act May 27, 1908, c. 199, 35 St. at L. 313, "That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney or other instrument or method of incumbering real estate made before or after the approval of this act which affects the title of the land allotted to the allottees of the Five Civilized Tribes prior to the removal of the restrictions therefrom, and also any lease of such restricted land, made in violation of law before or after the approval of this act, shall be absolutely null and void," does not affect a deed made after the restrictions were removed, and the land filed, for an adequate consideration paid at the time of its execution, though the graⁿtor, prior to filing on the land, had entered into a contract to convey to the grantee.

(Syllabus by Rosser, C.)

*Error from District ·Court, Grady County;*
*Frank M. Bailey, Judge.*

Action by Newt H. Casey against O. L. Bingham and another. Judgment for defendants, and plaintiff brings error. Affirmed.

*Wadlington & Wadlington and R. E. Davenport,* for plaintiff in error.

*Barefoot & Carmichael* and *Chas. Fechheimer,* for defendants in error.

Opinion by ROSSER, C. This was an action of ejectment to recover a certain 100 acres of land which the plaintiff

in error, Newt H. Casey, who was plaintiff below, conveyed to John C. Lewis.

Casey is an intermarried citizen or member of the Chickasaw Tribe of Indians. On the 11th of May, 1904, and before he filed on the land in controversy, Casey made a written contract with Lewis, by the terms of which he agreed to file on the land as soon as his enrollment as a member of the tribe was approved by the Secretary of the Interior, and to convey the land to Lewis by a warranty deed as soon as he filed. Lewis agreed to pay him $2,000 for the land; $150 to be paid at the time of the making of the contract and the balance when the deed was made. Lewis paid a portion of the consideration at the time the contract was made as therein agreed. Casey filed on the land as part of his surplus allotment, and on the 18th day of June, 1904, he executed a deed conveying the land to Lewis. Lewis paid him the balance of the $2,000 when the deed was made. Lewis kept the land nearly a year and sold it to Brannon. Brannon sold to the defendant, Bingham. The trial court held that Casey could not recover.

It is the contention of the plaintiff that the contract of May 11, 1904, to convey the land, was illegal and void, and that, as the deed of June 18th was executed pursuant to the previous contract, it was tainted with the same illegality, was and is void, and did not and does not operate to convey the land. The contract of May 11, 1904, was not valid. In the case of *Bledsoe v. Wortman*, 35 Okla. 261, 129 Pac. 841, it was decided in an opinion by Mr. Justice Williams that a deed by a member of the Cherokee Tribe of Indians, executed January 21, 1905, but prior to the selection of his allotment, conveying a certain 40 acres of land which he afterwards selected as his allotment, did not convey title to the land. This decision was followed by Robertson, C., in the case of *Lynch v. Franklin, ante,* 130 Pac. 599. It is not necessary to go over the ground covered by those cases.

Plaintiff in error contends that those cases are decisive of this one. They do apply so far as the contract of May 11, 1904,

is concerned, but the facts with reference to the payment of the consideration and the execution of the deed in this case are different from the facts of those cases. In both those cases the transaction was complete before the land had been selected and filed upon as an allotment. In this case the deed was made and the greater part of the consideration paid after the filing had been made. The Act of April 21, 1904 (33 St. at L. 189, c. 1402) provided that:

"All the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed."

This provision was in force at the time the contract was entered into as well as the time when the deed was made. It did not operate to make the contract valid, because it did not apply before the title vested in the allottee. The member of the tribe had nothing before he filed, and therefore there was nothing belonging to him from which restrictions could be removed.

There was no statute expressly prohibiting an intermarried citizen from alienating his allotment in advance of his filing after the Act of April 21, 1904. A deed or contract for a deed was not binding because he did not own the land, and it was an attempt to dispose of that which the government and the tribe had sole right to dispose of. It was the policy of the government and the various Indian tribes to place each allottee on an equal footing at the time the allotments were made. It was their intention that each allottee should receive as his own by the allotment a body of land equal in value, as nearly as possible, to that of every other allottee of the same tribe, and that the title should vest in him unincumbered, to be kept by him for his own benefit, or disposed of by him when his restrictions should be removed. If contracts or deeds executed prior to the filing had been recognized as valid, the business of the land office might have been delayed and the liberty of the members of the tribe in the selection of allotments interfered with by persons claiming to have purchased from them. But none of

these considerations had any force after the allotment was made. The tribe and the government had then disposed of the land and vested it in the allottee. Their work was done, and, if any restrictions against the alienation remained, they must be found in express statutes.

In this case the restrictions were off the land by the express provisions. of the Act of April 21, 1904, quoted above. The plaintiff could sell the land. The statute as to this land gave him power to sell. The contract that he made before filing, while executed in part, had not been completed, and the plaintiff had the right to refuse to complete it. If he had refused to make the deed, he could not have been compelled to do so. But he made the deed. The consideration he received at the time he made the deed was doubtless the main, if not the only, incentive which caused him to make it. The consideration then paid was considerably more than the appraised value of the land. A deed made at the time this one was made for the consideration then paid would doubtless have been good. Is the fact that .there had been a prior contract sufficient to invalidate this deed? It must be remembered that there was nothing immoral in the prior contract, and that it violated no statute. It is not a case where an immoral consideration enters into the transaction and taints every part of it. Plaintiff made the deed when it was lawful to make it and received a lawful consideration. The deed was good and carried the title to the defendant Lewis. At the time the deed was made the government and the tribe no longer had any interest in the land.

"The objection that a contract is immoral or illegal, as between plaintiff and defendant, sounds at all times very ill in the mouth of a defendant. It is not for his sake that the objection is ever allowed, but is founded ·on the general principles of policy, which the defendant has the advantage of, contrary ·to the real justice between himself and the plaintiff." (Lord Mansfield in *Hulman v. Johnson,* Cowp. Rep. 434.)

The purchaser of this land has a stronger case than had the purchaser in the case of *Hartman v. Butterfield Lumber Co.,* 199 U. S. 335, 26 Sup. Ct. 63, 50 L. Ed. 217. In that case

a patentee of public land entered into a contract with the lumber company, before he received the patent, to convey to it a right of way over the land and the pine timber on the land. After he received the patent he made the conveyance. It appears that the consideration was paid before the patent was issued. Mr. Justice Brewer, affirming a judgment of the Supreme Court of the state of Mississippi, holding the conveyance valid, said:

"For the purposes of this case it may be conceded that the contract made before the patent was, by virtue of the policy of the United States as disclosed in its statutes, void, and could not have been enforced by the Norwood & Butterfield Company, but the contract was not inherently vicious or immoral. It was simply void because in conflict with the federal statutes. *Anderson v. Carkins,* 135 U. S. 483, 10 Sup. Ct. 905, 34 L. Ed. 272. When the patent issued, the full legal title passed to the patentee. He could do with the land that which he saw fit, sell or give it away, and if he voluntarily conveyed it he could not thereafter repudiate the conveyance. He may well have thought that, having received money from the company to enable him to pay for the land, it was equitable that he should convey that interest which he had agreed to convey. At any rate, he had a right to exercise a choice in the matter, and, having exercised it, he at least cannot complain. Whether the government could challenge the conveyance we need not determine, for, if it had any right to interfere, it has not chosen to do so. It is generally true that an executed contract, voluntarily executed, without fraud or duress, is binding and cannot be repudiated by the party who executed it. In *Bibb v. Allen,* 149 U. S. 481, 497, 13 Sup. Ct. 950, 37 L. Ed. 819, 825, Mr. Justice Jackson, speaking for the court, thus stated the law: 'It is well settled by the authorities that the defense of the statute of frauds cannot be set up against an executed contract. *Dodge v. Crandall,* 30 N. Y. 294, 304; *Brown v. Farmers' Loan & T. Co.,* 117 N. Y. 266, 273, 22 N. E. 952; *Madden v. Floyd,* 69 Ala. 221, 225; *Gordon v. Tweedy,* 71 Ala. 202, 214; *Huntley v. Huntley,* 114 U. S. 394, 400, 5 Sup. Ct. 884, 29 L. Ed. 130, 131; Browne, Stat. Fr. sec. 116. This rule proceeds and rests upon the principle that there is "no rule of law which prevents a party from performing a promise which could not be legally enforced, or which will permit a party morally, but not legally, bound to do a

certain act or thing, upon the act or thing being done, to recall it to the prejudice of the promisee, on the plea that the promise, while still executory, could not by reason of some technical rule of law have been enforced by action." *Newman v. Nellis,* 97 N. Y. 285, 291,' *St. Louis Hay & Grain Co. v. United States,* 191 U. S. 159, 163, 24 Sup. Ct. 47, 48 L. Ed. 130."

Plaintiff contends that the provision of section 19 of the Act of April 26, 1906 (34 St. at L. 144, c. 1876), as follows:

"And every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions be and the same is hereby, declared void" —and also the provision of section 5 of the Act of May 27, 1908 (35 St. at L. 313, c. 199), as follows:

"That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to the removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act, shall be absolutely null and void" —renders the deed executed by the plaintiff in this case illegal and void.

The Act of April 26, 1906, does not affect the deed in this case, because to so hold would be to give that statute a retroactive effect. It is a rule of construction that statutes will not be given a retroactive effect if any other reasonable construction is possible. *Good v. Keel,* 29 Okla. 325, 116 Pac. 777; *Moberly v. Roth,* 23 Okla. 856, 102 Pac. 182; *Theis v. Board,* 22 Okla. 333, 97 Pac. 973; *Myatt v. Ponca, etc., Co.,* 14 Okla. 189, 78 Pac. 185, 68 L. R. A. 810.

In *Southwestern Coal & Improvement Co. v. McBride,* 185 U. S. 499, 22 Sup. Ct. 763, 45 L. Ed. 1010, Mr. Justice White quoted with approval from the opinion of the Circuit Court of Appeals in the same case (43 C. C. A. 652, 104 Fed. 473):

"The function of the Legislature is to prescribe rules to operate upon the actions and rights of citizens in the future. While, in the absence of a constitutional inhibition, the Legislature may give to some of its acts a retrospective operation,

the intention to do so must be clearly expressed, or necessarily implied from what is expressed; and, assuming the Legislature to possess the power, its act will not be construed to impair or destroy a vested right under a valid contract unless it is so framed as to preclude any other interpretation."

In the *Twenty Per Cent. Cases,* 20 Wall. 179, 22 L. Ed. 339, Mr. Justice Clifford said:

"Courts of justice agree that no statute, however positive in its terms, is to be construed as designed to interfere with existing contracts, rights of action, or with vested rights, unless the intention that it shall so operate is expressly declared or is to be necessarily implied, and pursuant to that rule courts will apply new statutes only to future cases, unless there is something in the nature of the case or in the language of the new provision which shows that they were intended to have a retroactive operation. Even though the words of a statute are broad enough in their literal extent to comprehend existing cases, they must yet be construed as applicable only to cases that may hereafter arise, unless the language employed expresses a contrary intention in unequivocal terms."

Pott. Dwar. 161; *Wood v. Oakley,* 11 Paige (N. Y.) 403; *Butler v. Palmer,* 1 Hill (N. Y.) 325; *Jarvis v. Jarvis,* 3 Edw. Ch. (N. Y.) 466; *McEwen v. Dem,* 24 How. 242, 16 L. Ed. 672; *Harvey v. Tyler,* 2 Wall. 329, 17 L. Ed. 871; *Blanchard v. Sprague,* 3 Summ. 535, Fed. Cas. No. 1,518; *United States v. Heth,* 3 Cranch, 399, 2 L. Ed. 479.

The provisions of the Act of May 27, 1908, do not affect the deed. The deed was made after the land was filed and when it was not subject to any restrictions. That act only attempted to render void contracts, conveyances, etc., made prior to the removal of restrictions. The deed does not come within the statute.

The judgment should be affirmed.

By the Court: It is so ordered.