## LEWIS v. ALLEN *et al.*

No. 3460.    Opinion Filed July 28, 1914.

(142 Pac. 384.)

1. **DEEDS—Inadequacy of Consideration.** Inadequacy of consideration alone is not sufficient to justify a court of equity in setting aside a deed regularly executed.

2. **APPEAL AND ERROR—Review—Findings in Equity Case—Effect After Approval.** In a suit in equity, the finding of the jury on questions of fact submitted to them are advisory merely, but, when approved by the court, have the same force as the verdict of a jury in a law action.

3. **STIPULATIONS—Conclusiveness—Case-Made—Estoppel.** Where counsel stipulate that the case-made contains all the evidence offered and received at the trial, they are estopped in this court and will not be heard to object to the consideration of an assignment of error requiring an examination of the evidence, on the ground that the case-made does not contain a recital that it contains all the evidence offered and received.

4. **INDIANS—Allotments—Restrictions on Alienation—Removal.** The restriction against the alienation of allotted land, imposed by section 16 of Act July 1, 1902, c. 1362, 32 St. at L. 641, was removed from the allotment of a Chickasaw allottee of one-eighth blood, by Act May 27, 1908, c. 199, 35 St. at L. 312.

5. **PLEADING—Supplemental Reply—Evidence.** If, in a suit to cancel a deed, at the close of the testimony, plaintiff made application to the court for permission to file a supplemental reply, alleging that the deed had been obtained by fraud and deceit, and the evidence did not support such allegations, it was not prejudicial error to deny the application.

(Syllabus by Galbraith, C.)

*Error from District Court, McClain County;*
*R. McMillan, Judge.*

Suit by Maudie M. Lewis against Chas. R. Allen and others. Decree for defendants, and plaintiff brings error.    Affirmed.

*J. F. Sharp* and *J. B. Dudley,* for plaintiff in error.

*W. Y. Dilley, J. W. Hocker,* and *T. L. Wright,* for defendants in error.

Opinion by GALBRAITH, C.    The plaintiff in error, Maudie M. Lewis (*nee* Bunch), a duly enrolled member of the Chicka-

saw Indian Nation, commenced this action to cancel a deed which she and her husband joined in executing to the defendant in error Chas. R. Allen on the 27th day of July, 1908, whereby her entire allotment, embracing 210 acres of land, was attempted to be conveyed. It is charged that the deed was void because it was executed during her minority and before she attained the age of eighteen years. All of the defendants, except Chas. R. Allen, answered and disclaimed any interest in the title to the land, alleging that they were tenants and holding under Allen. Allen answered and set out that he purchased the land from the real estate agent with whom the plaintiff and her husband had listed the same for sale; that he did not deal with Mrs. Lewis, and had no knowledge of her minority at the time, and was acting in good faith, and believed that he was getting a good title to the land, and paid the sum of $4,400 therefor, which was the full value thereof; and that he immediately thereafter entered upon the land, and had since held the same, and had placed permanent and valuable improvements thereon. It was further averred that after the said Mrs. Lewis reached her majority, as shown by the rolls kept by the government authorities, to wit, on the 26th day of September, 1910, he obtained another deed from her by which a full and complete title to the land was vested in him, and set out this deed as a defense to the action. A reply was filed in which it was charged that the deed of September 26, 1910, was void for the reason that it was procured to supplement a void deed, and for an inadequate consideration, namely, $500, which was less than the appraised value of said land, the deed having been executed during the existence of the tribal government of said Chickasaw Nation, and that the land could not be sold at that time for less than its appraised value, which was in excess of $1,000.

The court called a jury and submitted to them for determination six special questions of fact:

First. Whether the plaintiff was eighteen years of age on the 27th day of July, 1908, when the first deed was executed. The jury answered to this question that "she was not."

Second.  What, if any, part of the consideration paid for the deed of July 27, 1908, did she have in her possession on April 13, 1910, this being the date she became eighteen years of age, according to the testimony of her father? To this the jury answered, "None."

· Third.  What was the total consideration received by the plaintiff for the deed of September 26, 1910? To this the jury answered, "$500."

Fourth.  What was the fair rental value of the premises in controversy for the years 1908, 1909, and 1910? To which the jury returned an answer, "$475 for each of said years."

Fifth.  Was the consideration paid by Allen to the plaintiff, at the time of the making of the deed of September 26, 1910, adequate or inadequate in law? To which the jury answered "Adequate."

Sixth.  What was the fair, reasonable market value of the improvements placed on the premises by Chas. R. Allen while the same were in his possession? To which the jury answered, "$450."

A motion was filed on behalf of the plaintiff for judgment upon special findings Nos. 1, 2, 3, 4, and. 6, and she also presented a motion to set aside finding No. 5. Each of these motions were denied by the court and exceptions saved, and the court approved these several findings and rendered judgment on them in favor of the plaintiff for the rental value of the land as found by the jury for the years 1908 and 1909, and against the defendant Chas. R. Allen in the sum of $950 and interest and. costs, and further decreed that Chas. R. Allen had a better title to the land in controversy than did the plaintiff. Exceptions were saved to this decree, and after the denial of a new trial, an appeal was duly perfected to this court.

The court, having approved the answer returned by the jury to question No. 1, thereby found the fact to be that Maudie M. Lewis was a minor at the time of making the deed of July 27, 1908. There is no controversy as to the law arising upon this

finding, and that thereunder such deed was void. The correctness of this conclusion and finding is not disputed by any of the parties to the cause.

It is insisted on behalf of the defendant in error that the assignments urged against the validity of the deed of September 26, 1910, cannot be considered by the court on this appeal, since the same require an examination of the evidence taken at the trial, and that there is no affirmative recital in the case-made that it contains all of the evidence offered and received. In reply to this position, attention is called to the fact that there is in the case-made a stipulation signed by all of the counsel, in which it is recited that the record contains "all the evidence offered and introduced," and that, on account of this stipulation, the counsel for the defendant in error are estopped from now denying that the case-made does contain all the evidence, notwithstanding the absence of the positive recital therein of that fact. This contention is correct both in law and in morals. It has been held by this court that such a stipulation cures the defect of the absence of such recital in the case-made, or at least prevents counsel, who signed the stipulation, from taking advantage of the absence of the proper recital in the case-made.

In *Northcutt et al. v. Bastable,* 39 Okla. 124, at page 131, 134 Pac. 423, at page 426, it is said:

"There was also a motion to dismiss the appeal for that the case-made contained no averment by way of recital that it contained all the evidence introduced at the trial. This motion would have been sustained but for the fact that on page 52 of the case-made there is a stipulation, signed by counsel for both parties, that 'the foregoing case-made contains a full, true, correct and complete copy [of] all pleadings filed, all the evidence offered and introduced. * * *' This stipulation cures the defect complained of so far as this case is concerned, and estops defendant in error to urge further consideration thereof."

It is admitted that this deed of September 26, 1910, was not executed until after this suit had been instituted, and that, although a cash consideration of $4,900 was recited therein, only $500 was actually paid for the execution of that deed. This sum, it is contended, is so grossly inadequate that same should be

canceled on that account; that the jury found, and the court approved such finding, that the rental value of the land was $475 per year, only $25 less than the total consideration paid for this deed. It is argued that this, taken in connection with the fact that Maudie M. Lewis was an uneducated Indian girl, without business experience, shows the consideration was so grossly inadequate as to amount to fraud, or at least an absence of evidence to support the finding, and taken in connection with the fact that, after making the agreement for the second deed, she was studiously kept away from her attorney. We do not approve of this argument and the conclusion urged therefrom. From reading the testimony of Mrs. Lewis, as set out in the record, we are convinced that she was not uneducated, but she appears to be bright and far above the average of the people of her class. She gave a detailed and intelligent account of the expenditure of the $4,400 which Allen paid for the deed of July 27, 1908. She shows where and when and how all of this money was dissipated, extending over a period of more than two years, and she also testified that she knew that the deed of July 27, 1908, was void at the time Allen's agent approached her about executing the deed of September 26, 1910; that this agent visited her at her home near Sulphur in August, 1910, and they agreed upon the terms for executing the new deed after she became of age, as shown by the rolls. She agreed to execute this deed with her husband for $500. At that time $100 was paid her, and the additional $400 was to be paid when the deed was executed, and she agreed to come to Oklahoma City for the purpose of executing that deed, and she and her husband came to Oklahoma City on the 20th of September, and remained there six days before the deed was signed and delivered. From the time the arrangements were made for the execution of this deed in August until the 26th day of September following, she had ample time to see and confer with disinterested friends and to take independent advice about making the deed and to advise with her attorney, if she wished to do so. There can be no serious question that Mrs. Lewis voluntarily and willingly executed the deed with full knowledge of

the consequences of her act in so doing. The evidence does not show that any fraud was perpetrated upon her.

Inadequacy of consideration, under the circumstances shown by the record, would not have justified the court in canceling this deed upon that ground. The general rule is announced in Storey's Eq. Juris. sec. 244:

"Inadequacy of consideration is not, then, of itself a distinct principle of relief in equity. The common law knows no such principle. The consideration, be it more or less, supports the contract. Common sense knows no such principle. The value of a thing is what it will produce; and it admits of no precise standard. It must be in its nature fluctuating, and will depend upon 10,000 different circumstances. One man, in the disposal of his property, may sell it for less than another would. He may sell it under a pressure of circumstances, which may induce him to part with it at a particular time. If courts of equity were to unravel all these transactions, they would throw everything into confusion and set afloat the contracts of mankind. Such a consequence would, of itself, be sufficient to show inconvenience and impracticability, if not the injustice, of adopting the doctrine that mere inadequacy of consideration should form a distinct ground for relief."

Mrs. Lewis knew at the time she entered into the contract for the second deed, and also at the time of executing this deed, that she had taken $4,400 of Allen's money for a void deed; that she and her husband had spent this money, and that she still held the legal title to the land; that she was in need of funds to assist her husband out of trouble, and she wanted to help him; that she was under no legal obligation to give the second deed, but that, by doing so, she could get money to relieve her pressing necessities and at the same time discharge a moral obligation imposed upon her by the circumstances connected with the first deed. The jury had a right to, and doubtless did, take all these things into consideration in finding that the $500 was an adequate consideration for the second deed.

In the case of *Casey v. Bingham,* 37 Okla. 489, 132 Pac. 665, there is quoted an excerpt from the opinion of Mr. Justice Brewer, in the case of *Hartman v. Butterfield Lbr. Co.,* 199 U. S. 335, 26 Sup. Ct. 63, 50 L. Ed. 217, as follows:

"It is generally true that an executed contract, voluntarily executed, without fraud or duress, is binding and cannot be repudiated by the party who executed it. In *Bibb v. Allen,* 149 U. S. 481, 497, 13 Sup. Ct. 950, 37 L. Ed. 819, 825, Mr. Justice Jackson, speaking for the court, thus stated the law: 'It is well settled by the authorities that the defenses of the statute of frauds cannot be set up against an executed contract. *Dodge v. Crandall,* 30 N. Y. 294, 304; *Brown v. Farmers' Loan & T. Co.,* 117 N. Y. 266, 273 [22 N. E. 952]; *Madden v. Floyd,* 69 Ala. 221, 225; *Gordon v. Tweedy,* 71 Ala. 202, 214; *Huntley v. Huntley,* 114 U. S. 394, 400, 5 Sup. Ct. 884, 29 L. Ed. 130, 131; Browne, Stat. Fr. sec. 116. This rule proceeds and rests upon the principle that there is no rule of law which prevents a party from performing a promise which could not be legally enforced, or which will permit a party morally, but not legally, bound to do a certain act or thing, upon the act or thing being done, to recall it to the prejudice of the promisee, on the plea that the promise, while still executory, could not, by reason of some technical rule of law, have been enforced by action.' *Newman v. Nellis,* 97 N. Y. 285, 291; *St. Louis Hay & Grain Co. v. United States,* 191 U. S. 159, 163, 24 Sup. Ct. 47, 48 L. Ed. 130."

We do not know what weight or influence the moral obligation had as an inducing cause in prompting Mrs. Lewis to enter into the contract for the deed and in performing this contract, but, after the delivery of the deed, it then became a legal and binding conveyance, and the court below was right in so holding.

Again it is urged that the deed is void because of the provisions of section 16 of the Supplemental Agreement (Act July 1, 1902, 32 St. at L. 641), which provides that the allottee shall not alienate his land at any time before the expiration of the Choctaw and Chickasaw tribal governments, for less than the appraised value, and that the tribal governments of said tribes were in full force and effect at the time of the second deed (chapter 1876, sec. 28, of Act of Congress of April 26, 1906), and, the $500 being less than the appraised value of the land, the deed is on that account void. It is not denied that this provision of section 16 of the Supplemental Agreement of 1902, forbidding the alienation of the land by allottees during the existence of the tribal government for less than the appraised value, was a restriction against alienation. It is contended that this restriction, as well as

others, against the alienation of the land allotted to Mrs. Lewis, she being one-eighth Indian blood, was removed by the act of May 27, 1908 (35 St. at L. p. 312), section 1 of which reads in part as follows:

"That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees, enrolled as intermarried whites, as freedmen, and as mixblood Indians having less than half Indian blood, including minors, shall be free from all restrictions."

It is said by the court in *MaHarry v. Eatman,* 29 Okla. 46, 116 Pac. 935:

"If the act of May 27, 1908, was intended by Congress as a substitute for all prior laws on the subjects therein covered, and we believe it was so intended, then its enactment operated as a repeal of all former laws on the same subject, although it contains no expressed words to that effect."

We therefore conclude that section 16 of the Supplemental Agreement was no longer applicable to the class of allottees to which Mrs. Lewis belonged, and that all restrictions against the alienation of her land were removed by the act of May 27, 1908. She had a perfect right to alienate her allotment on September 26, 1910, as she did, in making the conveyance of that date to the defendant in error, Chas. R. Allen, and on such terms as she pleased, so long as she was fairly dealt with, as she seems to have been in this instance. The trial court having found that this deed was secured without fraud, and for an adequate consideration, and decreed the title to the allotment in the defendant in error Allen, these findings and conclusions, being supported by the evidence, are conclusive on this court.

Complaint is also made that at the conclusion of the evidence the trial court refused to permit the plaintiff in error to file an amended reply, setting up fraud and deceit in procuring the deed of September 26, 1910. The application to file this amended reply was addressed to the discretion of the trial court.

The evidence did not sustain the claim of fraud and deceit, and we are convinced that the court did not abuse its discretion in denying permission to file this amended reply.

We conclude that the exceptions should be overruled, and the decree appealed from affirmed.

By the Court: It is so ordered.