## CATRON v. ALLEN.

No. 8091—Opinion Filed Nov. 28, 1916.

(161 Pac. 829.)

**1. Indians — Lands—Conveyances—Validity.**

A deed to a part of the allotment of a Cherokee citizen of three-sixteenths blood, before attaining his majority, and after act Cong. May 27, 1908, ch. 199, 35 Stat. 312, 313, took effect, is absolutely void as violative of section 5 of said act.

**2. Same.**

A Cherokee allottee, April 1, 1910, while a minor, in consideration of the payment of the purchase price, executed a deed for a part of his allotment, and on March 14, 1914, after he became of age, executed a second deed to the same grantee, for a consideration of $26 "in hand paid," and "for the purpose of ratifying" the deed of April 1, 1910. Held, that such second deed was not violative of the provisions of the governing statute, section 5 of the act of Congress of May 27, 1908, and conveyed title to the grantee.

(Syllabus by Galbraith, C.)

Error from District Court, Cherokee County; John H. Pitchford, Judge.

Action by Thomas Catron against G. W. Allen. Judgment for defendant, and plaintiff brings error. Affirmed.

W. A. Chase, A. B. Campbell, and Geo. Paschal, for plaintiff in error.

J. I. Coursey, for defendant in error.

Opinion by GALBRAITH, C. This action was commenced by the plaintiff in error, Thomas Catron, a Cherokee allottee, to recover the possession and quiet title to 50 acres of his allotment from his grantee, on the ground that his deeds were void, the one because made during his minority, and the other because made to ratify and confirm a void deed. The cause was tried on the following agreed statement of facts:

"That Thomas Catron, the plaintiff, had the rights of majority conferred upon him by the district court of Cherokee county, Okla., on the 19th day of March, 1910. That the enrollment records in the office of the Commissioner of the Five Civilized Tribes, at Muskogee, Okla., shows that Thomas Catron arrived at the age of 21 years on the 6th day of December, 1913. That on the 1st day of April, 1910, Thomas Catron and his wife executed two deeds covering the lands in controversy in this action, to the defendant, G. W. Allen, copies of which deeds are set out and attached to plaintiff's reply as Exhibits A and B. That on the 14th day of March, 1914, Thomas Catron and his wife executed another deed to the lands in controversy herein to the defendant, G. W. Allen. That Thomas Catron was paid an additional con-

sideration for the execution of that deed. That the clause in said deed, showing the purpose for which deed was executed, is as set out in Exhibit A attached to defendant's answer. That Thomas Catron was over the age of 21 years at the time he executed the deed of March 14, 1914, as shown by the Enrollment Records."

Upon these facts the court found for the defendant, G. W. Allen, and against the plaintiff. As a basis for the finding the court made findings of facts as follows:

"The Court: Well, gentlemen, I think I am ready to pass on that question. I find that on March 19, 1910, the plaintiff in this action appeared in this court with his father and asked that majority rights be conferred upon him. The plaintiff appeared before the court and submitted himself to examination, and the court found that he was possessed of sufficient intelligence and discretion to justify the court in granting the rights of majority. In granting this right the court is well aware that it did not confer upon the plaintiff the right to dispose of his allotment of lands as a member of the Cherokee Tribe, until the rolls disclosed that he had reached his majority. However, I find that on the 1st day of April, 1910, soon after his majority rights were conferred, he executed deeds to the defendant. The enrollment record shows that on December 6, 1913, the plaintiff did reach his majority, and on March 14, 1914, he executed to the defendant a deed covering the lands sued for. The consideration expressed in the deed is $26. At that time the plaintiff could have disposed of these lands for that sum, and the deed would have been valid, in the absence of fraud. I find, however, in the body of the deed a statement that this deed is given for the purpose of ratifying the deed made by the plaintiff prior to his majority, as shown by the enrollment records. The court is in some doubt as to whether the $26 was the consideration paid at that time for the land and the clause in the body of the deed was for the purpose of showing that the plaintiff ratified his former deeds. Whether or not the statement in the deed following the conveying clause, to the effect that the deed is given for the purpose of ratifying the former deeds, would vitiate the deed, the court is not prepared to say. I do hold as a matter of law at the date of the execution of the last deed, to wit, March 14, 1914, the plaintiff having reached his majority, as shown by the enrollment records, and having received a consideration therefor, and having executed a deed to the defendant for the premises in controversy, he conveyed to the defendant all rights, title, and interest the plaintiff had in said lands."

There is no question that the first deed, that of April 1, 1910, was void on account of the allottee's minority, and was incapable of ratification. Truskett v. Closser, 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. 549; Nunn v. Hazelrigg, 216 Fed. 330, 132 C. C. A. 474;

Welch v. Ellis, 63 Oklahoma, 163 Pac. 321. The second deed was a general warranty deed in form, and was executed at a time when the allottee was free of restriction. It was recited in this deed that for and in consideration of $26 in hand paid, the receipt of which is hereby acknowledged, the grantors "do hereby grant, bargain, sell and convey unto G. W. Allen the following described land," describing the land by metes and bounds. Then follows a clause reading in part:

"This deed is given for the purpose of ratifying a certain deed executed by grantor and his wife to the same grantee on the 1st day of April, 1910," etc.

Now, it is contended by the plaintiff in error that the deed of April 1, 1910, was void because the grantor was under the restriction of minority at that time, and that the deed of March 14, 1914, is likewise void because it was made for the purpose of ratifying and confirming a void deed. That this reference in the deed of March 14, 1914, to the prior void deed shows the purpose and intention of the parties to be to ratify and confirm the prior deed in violation of the acts of Congress controlling such conveyances. This contention cannot be sustained under the decisions of this court.

In Ehrig v. Adams [opinion subsequently withdrawn], 152 Pac. 594, there was a deed void because made during the period of restrictions, and a deed made to the same grantee after the removal of restrictions, and a reference in the second deed to the first. The second deed in that case recited a consideration of $1, and the reference clause as follows:

"This deed is made to correct a former deed made between the same parties, which was placed of record," etc.

One of the exceptions presented in that case was:

"That the deed from Hays Crockett to Henry Bratton, of date of July 4, 1910, was an attempted ratification of a prior void deed of date of October 31, 1906, and is itself invalid for want of power in Hays Crockett to ratify a contract made in violation of law."

The decision of the Supreme Court Commission, considering that case for decision, took the same view of the question now presented by counsel for plaintiff in error in the instant case, and held that the second deed was an attempt to ratify and confirm a prior void deed, and therefore the second deed was void also. However, the Supreme Court in a later case took a different view of the question, and overruled that case. McKeever v. Carter et al., 53 Okla. 360, 157 Pac. 56.

In Welch v. Ellis et al., 63 Oklahoma, 163 Pac. 321, is the last announcement of the court on the question here presented. In that case the allottee made a deed during his minority, and after becoming of age made a second deed to the same grantee without the payment of any additional consideration, and the same contention was made there as here, and the court, denying the contention, held that the controlling statute (section 5 of the act of May 27, 1908), was not thereby violated. Mr. Chief Justice Kane, speaking for the court, said:

"It will be observed that none of the acts of Congress removing restrictions attempt to make the right to convey, after restrictions are removed, depend upon the adequacy of the consideration received by the grantor. In that respect, after the restrictions upon alienation are removed, the Indian citizen stands upon the same equality with the ordinary citizen of the state. Mere inadequacy of price or any other inequality in the bargain is not per se a ground to avoid his deed, either in equity or by the terms of the statute. Practically all the local authorities cited by counsel for plaintiff in support of their contentions construe section 16 of the Creek Supplemental Agreement [32 Stat. 500, ch. 1323], and section 19 of the act of April 26, 1906. As we hold that section 5 of the act of May 27, 1908, is controlling in the case at bar, we do not deem the cases of that class cited by counsel to be in point. On the other hand, there is a line of cases wherein deeds executed subsequent to the act of May 27, 1908, were involved, in which unqualifiedly it is held that inadequacy of consideration alone does not constitute an equitable ground for setting aside such deeds, and that the provisions of section 5 of the act of May 27, 1908, does not affect a deed made after all restrictions upon the alienation of the lands therein described were removed. Lewis v. Allen, 42 Okla. 584 [142 Pac. 384]; Henley v. Davis, 156 Pac. 337; McKeever v. Carter et al., 157 Pac. 56. So we conclude that upon plaintiff attaining his majority the whole legal title to his land vested in him; that thereafter he could dispose of it as he saw fit, give it away, or sell it for any consideration, either legal or moral, which seemed to him sufficient. As the plaintiff herein voluntarily conveyed his land after attaining his majority, he cannot now, after the lapse of many years, repudiate the conveyance upon any except the ordinary equitable grounds. This latest deed to his surplus allotment not being violative of any statute, and there being no equitable grounds for setting it aside alleged or proven, it must stand."

See Hope v. Foley, 57 Okla. 513, 157 Pac. 727, to the same effect.

The reference in the second deed to the first deed might be taken to show a purpose to ratify the prior void deed. Under the law such a purpose could not be effectual, and at

most it was a vain attempt to do an impossible thing. The claim of title of the defendant in error was made under the deed of March 14, 1914. That deed was based upon a good consideration, and was made by competent grantors, and was sufficient in form to carry title, and no fraud, duress, or undue influence are claimed to have entered into the transaction.

It therefore appears that the trial court was right in its finding, and that the judgment appealed from should be affirmed.

By the Court: It is so ordered.