## GRUBBS v. THOMPSON et al.

No. 8606—Opinion Filed Feb. 11, 1919.

(178 Pac. 684.)

(Syllabus.)

### Indians—Allotment—Conveyance by Minor— Validity of Subsequent Deed.

G., a citizen by blood of the Choctaw Nation, possessed of one-eighth Indian blood, while a minor, executed a deed for part of his allotment, the consideration being $1,-500. After reaching the age of 21 years, he employed counsel to bring action to recover the lands so conveyed. After propositions had been made pro and con looking towards a settlement, G. agreed that upon the payment of $500 cash, he would execute a new deed. The $500 was paid, a new deed was executed, reciting a consideration of $2,000, arrived at by adding the $500 then paid to the $1,500 consideration for the former deed. Held, that the last deed was neither illegal, void, nor violative of the provisions of section 5, Act Cong. May 27, 1908, and the same conveyed title to the grantee.

Error from District Court, Bryan County; Jesse M. Hatchett, Judge.

Action by Benjamin Grubbs Jr., against Green Thompson and others. Judgment for defendants, motion for new trial overruled, and plaintiff excepts and brings error. Affirmed.

Crockett & Fowler, for plaintiff in error.

Hatchett & Ferguson and C. C. Parker, for defendants in error.

PITCHFORD, J. The plaintiff commenced this action in the district court of Bryan county on the 24th day of November, 1915, for the recovery of certain lands described in the petition. Plaintiff alleges that he is a citizen by blood of the Choctaw Nation and possessed of one-eighth Indian blood and enrolled opposite roll No. 2570; that on the 31st day of August, 1908, he executed and delivered a deed to the lands in controversy to the defendant Mattie Houston; that on the 26th day of September, 1910, the defendant Mattie Houston quitclaimed to plaintiff the same lands, and that on the 27th day of September, 1910, plaintiff deeded the lands to the defendant Green Thompson, with the exception of a certain mistake as to the number of a section. The defendant Green Thompson, on the 30th day of September, 1910, deeded the lands to the de-

fendant Mattie Houston; that on the 17th day of May, 1913, plaintiff made a deed to defendant Green Thompson, for the purpose of correcting the misdescription in the former deed, and that on the date last mentioned defendant Thompson executed a deed to the defendant Mattie Houston, and that on the same date, defendant Mattie Houston executed to the First State Bank of Durant a mortgage on the lands; that on the 19th day of May, 1913, the defendant bank assigned the said mortgage to the defendant the Northern Assurance Company. Plaintiff further states that he was born March 5, 1889. He contends that the deeds he executed and delivered were null and void for the reason that the original deed was executed during his minority, and that all the subsequent deeds and mortgages were null and void for the reason that they all formed parts of one general scheme and of the same transaction, that they cover the same tract of land, and that the same consideration entered into all the deeds.

Upon the trial of the cause, plaintiff testified that in the year 1908, during the month of August, he made the deed to the defendant Thompson for a consideration of $1,500, which consisted of a small amount of cash, four mules, and a wagon, buggy, and harness, and the remaining one year of an unexpired lease; that at the time he informed Thompson that he was a minor, but that Thompson told him he could make an affidavit that he was 21 years of age, and he could execute a new deed when he was 21; that he employed attorneys to get the land back; that Thompson then threatened to prosecute him for making a false affidavit; that he was intimidated by the threats so made, and was advised by his counsel to make a new deed; that he received for the last deed $300. The testimony on the part of the defendants is to the effect that nothing was said about plaintiff's being a minor on the date of the first deed; that plaintiff claimed to be of age, and made an affidavit to that effect; that nothing was ever said as to the first deed not being good until the plaintiff was preparing to bring an action; that the matter of settlement was discussed, and finally all parties agreed on $500 for a new deed; that $500 in cash was paid for a new deed, which was executed September 27, 1910; that the consideration in the deed last mentioned was $2,000, arrived at by adding to the $1,500 recited in the first deed the $500 which was paid for the deed executed on September 27, 1910. It was agreed by the parties that the First State Bank and Northern Assurance Company were innocent hold-

ers under the mortgage executed by Mrs. Houston, and without notice of plaintiff's claim other than such notice as may have been shown by the records of Bryan county and the records in the office of the superintendent of the Five Civilized Tribes at Muskogee, Oklahoma. The cause was finally submitted to the court upon the argument of counsel, testimony of the witnesses, and pleadings. The court found all the issues in favor of the defendants, plaintiff filed a motion for a new trial, which was overruled, and exceptions saved, and plaintiff appeals.

Plaintiff concedes that all assignments of error may be grouped under one head and embraced and discussed in the proposition named:

"That Congress by the adoption of the act of May 27, 1908, did not intend to change the existing rules of law relating to the ratification of void deeds and contracts."

Section 5 of the act of Congress of May 27, 1908, c. 199, 35 Stat. 313, supra, is as follows:

"That any attempted alienation or incumbrance by deed, mortgage, contract to sell, power of attorney, or other instrument or method of incumbering real estate, made before or after the approval of this act, which affects the title of the land allotted to allottees of the Five Civilized Tribes prior to removal of restrictions therefrom, and also any lease of such restricted land made in violation of law before or after the approval of this act shall be absolutely null and void."

Counsel for plaintiff submit with the utmost respect that the decisions of his court are contrary to the contention of plaintiff, and that the decisions are based upon a misconception of the law as to void and voidable deeds and contracts; in other words, that the court holds that that which the law declares to be illegal and void may be ratified and made valid by the subsequent act of the guilty parties.

We should have little trouble in agreeing with plaintiff's view if there were no other deeds involved than those executed by him prior to reaching his majority. The act is positive, and is susceptible of no other construction than that any act on the part of the allottee during minority affecting his title to the lands allotted shall be void. Did Congress by this act intend to hold the Indians in perpetual tutelage? Are we to conclude that simply because an individual happens to be an Indian, for that reason, and that alone, he is forever denied the right and power to be as honest and fair-dealing as others after he reaches man's estate? It is time we were breaking away from the maud

lin' sentiment that the Indian, with all restrictions removed, is an ignorant, unsophisticated individual, and that every one is trying to overreach him. We know as a matter of common knowledge that the Indian is numbered among the most intellectual and successful citizens of the state of Oklahoma. One of our United States Senators is an Indian, we have Indians representing the state of Oklahoma in Congress, and, besides, some of the brightest and most successful lawyers in the state are Indians, as well as some of our most successful merchants, farmers, and bankers. If an Indian, though a minor, attempts to dispose of his allotment by sale, receives a fair consideration therefor, uses that consideration for his own benefit, and, upon reaching his majority, being then in all respects sui juris and knowing that a deed executed by him while a minor was absolutely void and in no way capable of being enforced, fairly, voluntarily, without fraud or duress, and for a new consideration, however inadequate, executes a new deed to his former grantee for the same real estate, the last deed conveys title as completely as if no former deed had ever been attempted. No other conclusion can be reached. All restrictions have been removed. He has become a full-fledged citizen, with all the privileges, dignities, and rights of any other citizen of the state, and should not be discriminated against by being reminded that though a man he is not as capable of protecting himself against the wiles of the sharper or grafter as other citizens. This position is abundantly supported by the decisions of our own court, beginning with the case of Lewis v. Allen, 42 Okla. 584, 142 Pac. 384, and followed by a long line of other cases to the same effect. In Lewis v. Allen, supra, it is said by the court:

"Again it is urged that the deed is void because of the provisions of section 16 of the Supplemental Agreement (Act July 1, 1902, 32 State. L. 641), which provides that the allottee shall not alienate his land at any time, * * * for less than the appraised value. * * * It is contended that this restriction, as well as others, against the alienation of the land allotted to Mrs. Lewis, she being one-eighth Indian blood, was removed by the act of May 27, 1908 (35 Stat. L. 312), section 1 of which reads in part as follows: 'That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees, enrolled as intermarried whites, as freedmen, and as mixed blood Indians having less than half Indian blood, including minors, shall be free from all restrictions.' "

In the case of Ma Harry v. Eatman, 29 Okla. 46, 116 Pac. 935, Galbraith, C., speaking for the court, says:

"If the act of May 27, 1908, was intended by Congress as a substitute for all prior laws of the subjects therein covered—and we believe it was so intended—then its enactment operated as a repeal of all former laws on the same subject, although it contains no expressed words to that effect."

In the case of Catron v. Allen, 61 Okla. 306, 161 Pac. 829, it is said:

"A Cherokee allottee, April 1, 1910, while a minor, in consideration of the payment of the purchase price, executed a deed for a part of his allotment, and on March 14, 1914, after he became of age, executed a second deed to the same grantee, for a consideration of $26 'in hand paid,' and 'for the purpose of ratifying' the deed of April 1, 1910. Held, that said second deed was not violative of the provisions of the governing statute, section 5 of the act of Congress of May 27, 1908, and conveyed title to the grantee."

In Welch v. Ellis, 63 Okla. 158, 163 Pac. 321, Justice Kane, speaking for the court, says:

"It will be observed that none of the acts of Congress removing restrictions attempt to make the right to convey, after restrictions are removed, depend upon the adequacy of the consideration received by the grantor. In that respect, after the restrictions upon alienation are removed, the Indian citizen stands upon an equality with the ordinary citizen of the state. Mere inadequacy of price, or any other inequality in the bargain, is not per se a ground to avoid his deed, either in equity or by the terms of the statute. Practically all the local authorities cited by counsel for plaintiff in support of their contention construe section 16 of the Creek Supplemental Agreement (32 Stat. 500, c. 1323) and section 19 of the act of April 26, 1906. As we hold that section 5 of the act of May 27, 1908, is controlling in the case at bar, we do not deem the case of that class cited by counsel to be in point. On the other hand, there is a line of cases wherein deeds executed subsequent to the act of May 27, 1908, were involved, in which unqualifiedly it is held that inadequacy of consideration alone does not constitute an equitable ground for setting aside such deeds, and that the provisions of section 5 of the act of May 27, 1908, do not affect a deed made after all restrictions upon the alienation of the lands therein described were removed. Lewis v. Allen, 42 Okla. 584, 142 Pac. 384; Henley v. Davis, 57 Okla. 45, 156 Pac. 337; McKeever v. Carter et al., 53 Okla. 360, 157 Pac. 56. So we conclude that, upon the plaintiff attaining his majority, the whole legal title to his lands vested in him; that thereafter he could dis-

pose of it as he saw fit—give it away, or sell it for any consideration, either legal or moral, which seemed to him sufficient. As the plaintiff herein voluntarily conveyed his land after attaining his majority, he cannot now, after the lapse of many years. repudiate the conveyance upon any except the ordinary * * * grounds. This latest deed to his surplus allotment not being violative of any statute, and there being no equitable grounds for setting it aside alleged or proven, it must stand."

In the instant case, the plaintiff, after reaching his majority, and without fraud or duress, in consideration of the sum of $500, executed a new deed. He had a perfect right to do this regardless of the fact that all other deeds executed by him during his minority were absolutely void. The latest deed was founded upon a consideration, whether $1 or $2,000, and by this last deed he conveyed his title to the lands as fully as could be done by any other citizen.

Plaintiff further contends that the deeds made during his minority were absolutely void, and therefore not capable of ratification. We do not understand the decisions of this court as holding the contrary, but in the case at bar plaintiff, after reaching his majority, employed counsel to bring action for the purpose of recovering the lands attempted to be conveyed by the void deeds. Propositions looking towards a settlement were discussed, plaintiff insisting upon $1,000 in full settlement. Finally $500 was agreed upon. This sum was paid and a deed executed. At this time plaintiff had reached his majority and was clothed with all the powers and rights of any other adult. The deed was for an entirely new consideration, and the fact that the consideration expressed was $2,000 would in no manner affect the legality of the transaction. This deed was not executed for the purpose of ratifying the former deeds, but was executed and delivered in consideration that $500 be paid plaintiff.

We deem it unnecessary to cite additional authorities. We hold the court below correctly found for the defendants both upon the law and the facts.

The judgment of the trial court is therefore affirmed.

All the Justices concur.