## JOHNSTON v. BURNETT et al.

No. 9909—Opinion Filed May 17, 1921.

(Syllabus.)

1. Indians—Validity of Deeds — Contract of Sale Before Removal of Restrictions.

Where a Choctaw Indian, prior to the act of Congress of April 26, 1906, enters into a

contract for the sale of a part of his allotment, the alienation of which is restricted at the time of entering into the contract, and thereafter obtains the removal of his restrictions and pursuant to said contract executes a deed for said land, held, that such deed is void and does not pass title.

## 2. Same—Operation of Statute.

Section 19 of the act of Congress of April 26, 1906, is not retroactive, but it does render invalid any deed made by a Choctaw Indian after the passage of such act if said deed was made in carrying out a contract for the sale of his restricted lands entered into before the passage of such act.

## 3. Appeal and Error—Review of Equity Case—Denial of New Trial for Insufficiency of Evidence—Reversal.

In an action invoking the equitable aid of the court to set aside a deed, where a motion for a new trial is filed setting up as one of the grounds that the judgment of the court is not supported by the evidence, such motion searches the entire record, and where it appears that the judgment is clearly against the weight of the evidence, such judgment will be reversed.

Error from District Court, Grady County; Will Linn, Judge.

Action by Albert Johnston, a Choctaw Indian, against John J. Burnett, Edward C. Davis, and D. A. Davis, to recover 60 acres of land, being a part of the surplus allotment of the plaintiff. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

B. C. Wadlington and A. Wayne Wadlington, for plaintiff in error.

Thos. B. Losey and James L. Brown, for defendants in error.

MILLER, J. This action was commenced in the district court of Grady county by Albert Johnston, as plaintiff, against John J. Burnett, Edward C. Davis, and D. A. Davis, as defendants, to recover a tract of 60 acres of land located in Grady county which was allotted to Albert Johnston as a member of the Choctaw Tribe of Indians. Trial was had to the court without a jury, and judgment rendered in favor of the defendants and against the plaintiff. Plaintiff appealed. The parties will be referred to as they appeared in the court below. The undisputed facts are as follows:

The land in controversy in this action was a part of the surplus allotment of the said Albert Johnston which he received as a part of his distributive share of the lands of the Choctaw Tribe of Indians. It was duly conveyed to him by allotment deed or patent, bearing date of December 28, 1905, which was thereafter approved by the Secretary of the Interior on March 27, 1906, and was filed for record with the Superintendent of the Five Civilized Tribes on April 2, 1906. On March 10, 1906, Albert Johnston entered into a written contract with E. C. Davis, one of the defendants herein, for the sale of the 60 acres of land in controversy herein, whereby he agreed to sell and convey to said E. C. Davis said land in consideration of $600, $100 of which was paid in cash and $500 to be paid as soon as title was accepted. September 25, 1906, the restrictions of Albert Johnston on the sale of the above described lands were removed by the Secretary of the Interior, to take effect in 30 days, which would be October 25, 1906. October 24, 1906, Edward C. Davis conveyed by quitclaim deed to he said Albert Johnston all rights he had in and to said lands, and specifically mentioned and released all rights under the contract of March 10, 1906. October 27, 1906, Albert Johnston conveyed by warranty deed to D. A. Davis, one of the defendants herein, the said land for a purported consideration of $750, and on the same day and immediately thereafter said D. A. Davis and Fannie Davis, his wife, conveyed said land by warranty deed to Edward C. Davis for a purported consideration of $900. On January 24, 1908, Edward C. Davis conveyed said land by warranty deed to John J. Burnett, one of the defendants herein. These lands were under restriction and inalienable at the time of making the contract of March 10, 1906, and until October 25, 1906, which was 30 days after the removal of the restrictions of Albert Johnston.

The plaintiff contends that the deed executed by Albert Johnston on October 27, 1906, was a part and parcel of the same transaction as making of the contract on March 10, 1906, and was done for the purpose of carrying into effect said contract. That the conveyance to D. A. Davis was merely a makeshift. That he was a go-between for the said Albert Johnston and Edward C. Davis. That all of said transactions were absolutely void, and that said defendant John J. Burnett had notice of all of them, and that the recording of the instruments filed in said cause was sufficient to impart notice to the said John J. Burnett. After a careful examination of the record, we agree with the contentions of plaintiff. The plaintiff makes several assignments of error, but as they are not discussed separately in the brief of either plaintiff or defendants, it will not be necessary to discuss them separately here.

Section eleven, act of Congress, June 28, 1898 (ch. 517, 30 Stat. at L. 498), provides as follows:

"Provided further, That the lands allotted shall be nontransferable until after full title

is acquired and shall be liable for no obligations contracted prior thereto by the allottee, and shall be nontaxable while so held."

Section 29 of the Original Choctaw-Chickasaw Allotment Agreement, adopted as section 29 of the act of Congress of June 28, 1898 (ch. 517, 30 Stat. at L. 507), provides in part as follows:

"All the lands allotted shall be nontaxable while the title remains in the original allottee, but not to exceed twenty-one years from date of patent, and each allottee shall select from his allotment a homestead of one hundred and sixty acres for which he shall have a separate patent, and which shall be inalienable for twenty-one years from date of patent. This provision shall also apply to the Choctaw and Chickasaw freedmen to the extent of his allotment. Selection for homestead for minors to be made as provided herein in case of allotment, and the remainder of the lands allotted to said members shall be alienable for a price to be actually paid and to include no former indebtedness or obligation —one-fourth of said remainder in one year, one-fourth in three years, and the balance of said alienable lands in five years from the date of patent.

"That all contracts looking to the sale or encumbrance in any way of the land of an allottee, except the sale hereinbefore provided, shall be null and void."

Section 15 of the Choctaw-Chickasaw Supplemental Agreement, act of Congress, approved July 1, 1902 (ch. 1362, 32 Stat at L. p. 643), reads:

"Lands allotted to members and freedmen shall not be affected or encumbered by any deed, debt, or obligation of any character contracted prior to the time at which said land may be alienated under this act, nor shall said land be sold except as herein provided."

Section 19 of the act of Congress of April 26, 1906 (ch. 1876, 34 Stat. at L. 144), reads in part as follows:

"And every deed executed before, or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby, declared void."

The oral testimony offered in this case discloses the following state of facts:

Albert Johnston testified he was a member of the Choctaw Tribe of Indians by blood and the allottee of the land in controversy; he was acquainted with Edward C. Davis, commonly known as Ed Davis. He entered into the contract for the sale in March, 1906, and received an advanced payment of $100 at the time of signing the contract. He did not know D. A. Davis, had no dealings with him, and did not know the deed he signed was made to D. A. Davis. All of his dealings were with Ed Davis. Ed Davis came to Roff, Oklahoma, about 30 days before the making

of the deed on October 27th; took the witness to Chickasha and requested him to stay there until he could make the deed, that is, until the 30 days had expired after the removal of the restrictions. That he signed the deed in compliance with the terms of the contract he had made in March, and that Ed Davis charged him $80 for board for the time he kept him at Chickasha and paid him $420. This made up the $600 provided for in the contract. He stated he did not know that the consideration in the deed was $750, and that all he received was the $100 paid in March and $420 paid in October and his board for the month. The quitclaim deed executed by Edward C. Davis on October 24, 1906, was never delivered to this witness. That he knew nothing about it; never heard of it until about the time of the trial of this case.

D. A. Davis testified that he did not know Albert Johnston and had no dealings with him. That he bought the land through his brother, Edward C. Davis, and a Mr. Stone, who was in partnership with Edward C. Davis in the real estate business. He made the deal for the land on the morning of October 27, 1906, and received the deed in the afternoon of the same day. He did not pay Albert Johnston anything for the land. He contracted to pay $750 for the land with his brother, Edward C. Davis, and Mr. Stone, but he never paid any money to any one. He and his wife on the afternoon of the day they received the deed executed a deed to his brother, Edward C. Davis, in consideration of $900 and that he received $150 profit. His brother paid him the $150 profit, and he supposed his brother settled with Johnston. That his wife came to an office in Chickasha on the afternoon of the day he was to receive the deed so they could immediately execute the deed to Edward C. Davis.

Edward C. Davis testified that he bought the land from D. A. Davis, and that D. A. Davis bought the land from Albert Johnston. Ed Davis and Stone were in the real estate business together, and they sold the land to D. A. Davis and the title he had he obtained by buying the land from his brother. That witness made a contract with Albert Johnston on the 10th day of March, 1906, and had it recorded and paid him $100. The Indian agreed to pay him the $100 back if he would sell the land for him, and the $100 was charged as commission against the Indian. That he thought Albert Johnston got $600 for the land and paid $100 commission. That he, witness, got $50, Nick Wooderidge, another Indian, got $50, and Stone got $50. That they deducted $150 from the $750 recited in the deed, and that he paid Albert Johnston $600 in money, clothes, and other

things. His brother, D. A. Davis, did not deal with the Indian at all, but that he and Stone dealt with the Indian. He did not remember whether he had told Albert Johnston about quitclaiming the land back to him or not.

This trial was had on the 6th day of November, 1917, and the court rendered judgment in favor of the defendants on this testimony. This testimony clearly shows the deed was executed pursuant to the contract of March 10, 1906, and for the specific purpose of carrying out said contract. We do not see how a court can reach any other conclusion.

It is contended that the inhibition on the contract is the act of April 26, 1906. The contract was made prior to that date and this statute is not retroactive.

In Simmons v. Whittington, 27 Okla. 356, 112 Pac. 1018, paragraphs one and two of the syllabus read:

"A deed conveying, or a contract for the sale of, a portion of a surplus allotment made by a Choctaw Indian by blood before the removal of restrictions upon her power to alienate same, in violation of the act of Congress, June 28, 1898 (ch. 517 sec. 29, 30 U. S. St. at L., p. 507), and of act of Congress, July 1, 1902 (ch. 1362, secs. 15, 16, 32 U. S. St. at L., p. 643), is void.

"The act of Congress, approved April 21, 1904 (33 U. S. St. at L., p. 204), authorizing the removal of all restrictions upon the alienation of allotted lands of members of the Five Civilized Tribes by blood, except minors and except as to homesteads, upon approval of the Secretary of the Interior under such rules and regulations as he may prescribe, authorizes the Secretary of the Interior to provide by general rule that no order removing the restrictions of any such allottee shall become effective until 30 days after its date; and a deed executed by an allottee after the date of the approval of the order removing restrictions upon the power of the allottee to alienate, but before the expiration of 30 days from the date of such order and approval, is void."

In Goodrum v. Buffalo, 162 Fed. 817, the court says:

"The language of the act and the patent could not have been more exact and clear to express the purpose and policy of the government to deny the power and right of these allottees to dispose of the lands in any manner until after the stated period of 25 years. As the greater includes the lesser, no contract, agreement, or obligation in form entered into by the allottee or his heirs within the limitation period could possibly have the effect to operate as, or result in, a transfer of the title to these lands to a third party. There is but one opinion among the courts, with the single exception of the ruling in said United States court of the Indian Territory, as to the construction of such acts of Congress and patents made thereunder, and that is that any and all schemes and devices resorted to for the purpose of acquiring title to the Indian allotments during the period of such limitations are abortive; and this for the palpable reason that it is a period of absolute disability on the part of the Indian to alienate his lands."

The act of Congress of April 26, 1906, is not retroactive. In an opinion by Rosser, C., Casey v. Bingham et al., 37 Okla. 484, 132 Pac. 663, it says in paragraph three of the syllabus:

"The provision of act of April 26, 1906, c. 1876, sec. 19, 34 St. at L. 144, that 'every deed executed before or for the making of which a contract or agreement was entered into before the removal of restrictions, be and the same is hereby declared void,' was not retroactive and did not affect deeds executed prior to its passage."

In this case the deed on which the defendants rely for their title was made subsequent to the passage of the act of Congress of April 26, 1906, and the deed is void. If this had been an independent transaction with no reference whatever to the contract of March 10, 1906, it would present a different question. It is clear to us that the inequity of the March contract was sought to be covered up by the ruse in making the deed to D. A. Davis. The deed having been made after the act was passed and pursuant to the contract made before the passage of the act 'and in violation of the plain provisions of the act, it clearly falls within the decision of this court in the case of Folsom v. Jones, 68 Oklahoma, 173 Pac. 649:

"A deed conveying, or a contract for the sale of, a portion of a surplus allotment, made by a Choctaw Indian by blood before the removal of restrictions upon his power to alienate same in violation of act of Congress June 28, 1898 (chapter 517, para. 29, 30 U. S. St. at L., 507), and of act of Congress, July 1, 1902 (chapter 1362, secs. 15, 16, 32 St. at L. 642, 643), is void.

"A deed to the surplus allotment of a full-blood Choctaw Indian, executed May 14, 1906, after the order of removal of restrictions against the alienation thereof, made in pursuance of a contract to convey such lands 'as soon as the time arrives when they (the allottee and wife) can lawfully do so', entered into prior to the removal of restrictions, is void as to the grantee therein by reason of section 19 of the act of Congress of April 26, 1906 (chapter 1876, 34 Stat. at L. p. 144).

"In an action brought by a full-blood Choctaw Indian to recover the possession of his surplus allotment attempted to be conveyed by him pursuant to an agreement made void by section 19 of the act of April 26, 1906 (34 Stat. at L. 144), the petition need

not allege a tender or offer to return the consideration received on account of such invalid conveyance."

In Mann v. Brady, 80 Okla. 299, 196 Pac. 346, this court said:

"The policy of the government is to exercise a protecting control over the Indian and his lands, and any contract made in disregard of that policy which cannot be carried to full fruition because of such governmental protection is void."

Where an action is tried to the court and the judgment of the trial court is clearly against the weight of the evidence and is not supported by the evidence, it is the duty of this court to set aside such judgment.

In Cudjo v. Smith et al., 81 Okla. 73, 196 Pac. 698, this court said:

"In an action invoking the equitable aid of the court to set aside a deed, where a motion for a new trial is filed setting up as one of the grounds that the judgment of the court is not supported by the evidence, such motion searches the entire record and where it appears that the judgment is clearly against the weight of the evidence, such judgment will be reversed."

The judgment of the trial court is reversed, with instructions to render judgment in favor of the plaintiff for the land in controversy and quieting his title thereto, and render judgment in favor of the plaintiff for the value of the rents and profits in accordance with the agreed statement of facts, and against each and all of the defendants; as against this amount defendants are entitled to a set-off of the amount paid Johnston for the land, together with interest; and render judgment in favor of the defendant John J. Burnett and against the defendants D. A. Davis and Edward C. Davis, on account of a breach of their warranty, for the amount paid by him as the purchase price of said land, together with interest as provided by law.

HARRISON, C. J., and KANE, JOHNSON, and KENNAMER, JJ., concur.